## The State v. William K. Elliott.

The Statute (Hart. Dig. Art. 464) plainly indicates the course to be pursued in the case of a lost indictment. The fact of the loss is to be entered upon the minutes of the Court,—which avoids the Statute of Limitations,—and a new indictment is to be prepared. The second indictment is, of course, to be found, in the same manner as the first, upon the testimony of witnesses, sworn to give evidence before the Grand Jury, *touching the truth of the accusation.*

Recitals in an indictment which are not repugnant or contradictory to the body of the indictment, and do not render unintelligible any of the material, traversible matters constituting the charge, are, at most, surplusage, which does no injury.

Appeal from Panola.    Indictment for betting at Faro.    After reciting at considerable length, the finding of an indictment against the defendant, on the 16th of June, 1853, for betting at Faro, and the loss of the indictment so found, the new indictment continued as follows:    And whereas the said Grand Jurors having before them the evidence to supply the loss of the aforesaid indictment, and to supply the same, therefore, in accordance with the Statute, in such case made and provided,

the said Grand Jurors upon their oath aforesaid do present, that the said William K. Elliott, &c., charging the offence, same as an ordinary indictment. Certified to have been found upon the testimony of John B. Turney. There had been an order of Court, permitting the District Attorney to substitute the lost indictment. The new indictment was found Dec. 13th, 1853, and charged the betting to have been on the 16th of June, 1853.

The defendant demurred to the indictment, on the ground that, 1st. Under the laws of this State, a subsequent Grand Jury is not empowered to substitute a lost indictment found by a previous Grand Jury. 2nd. Said indictment does not purport to be found on any evidence before the Grand Jury finding the same, proving the betting, &c., for which defendant is therein indicted, but is based on the supposed action of a previous Grand Jury. The Court sustained the demurrer.


*Attorney General,* for appellant. It is no valid objection to this new indictment, that there is another (the lost one) pending for the same offence. The only effect which it might be made to produce, would be that the Court would, if asked by the defendant, compel the State to elect which she would proceed on, and quash the other or others. (1 Arch. Crim Pl. 110, 1 ; 2 Hale's P. C. 239.)

Is the new indictment any the less an indictment, *per se,* because it recites, in the form of a preamble, the occasion, the reasons and the prior action of the Court, which led to its finding? To obtain the benefit of the suggestion of the loss of the old indictment, in the way of arresting the bar of the Statute of Limitations, it was deemed proper to recite all the anterior facts in the case, but still there is a good and valid self-relying and sustaining charge in it, which these recited and proved facts cannot vitiate, or in any way harm.

*Bowden & Chilton,* for appellee. The indictment was clearly bad. The Grand Jury finding it did not undertake to pres-

ent the defendant for betting at Faro, upon evidence touching that point. It is simply an effort to substitute a lost indictment, not on proof of defendant's acts, but upon evidence as to the contents of the lost paper, and the action of a former Grand Jury.

At Common Law a Grand Jury could find an original bill, but could not enquire into the action of a former Grand Jury, and thus supply a lost paper, by finding a new bill of similar import. It is equally clear that no such power is given by Statute.

The Act of 1850, (Hart. Dig. Art. 2750–51,) it is believed, has no application to criminal cases. But it could avail nothing in this case, as its provisions have not been complied with.

The Act of 1844 (Hart. Dig Art. 464) is merely a Statute of Limitations; or, to speak more correctly, its whole and sole object is to extend the time by which offences shall be barred where indictments are lost. On the discovery of such loss, if the fact be noticed upon the minutes of the Court, which puts an end to the former proceeding, offences barred by the expiration of a certain time from their commission, shall not be barred until the expiration of the same length of time after such loss is so entered of record. After such suggestion of loss, a new indictment can be preferred, and the bar of the Statute avoided.

It is clear that this indictment is not found in pursuance of the Act above cited, (Hart. Dig. Art. 464;) and if not, it cannot for a moment be regarded as a new and distinct proceeding. For if it be so regarded, its recitals, by way of preamble, are as foreign to its object as would be the Decalogue or Declaration of Independence, thrown in as a preface to the action of the Jury. It must therefore be regarded as an effort to continue the old prosecution by a substituted indictment.

WHEELER, J. The Statute (Hart. Dig. Art. 464) plainly indicates the course to be pursued in the case of a lost indictment. The fact of the loss is to be entered upon the minutes

of the Court, which avoids the Statute of Limitations; and a new indictment is to be preferred. The second indictment is, of course, to be found in the same manner as the first, upon the testimony of witnesses, sworn to give evidence before the Grand Jury, touching the truth of the accusation; and the prosecution is to be conducted, upon the second indictment, in the same manner as it would have been upon the first. This is the evident meaning and intention of the Statute. All that the Statute requires was done in this instance, and more. And it would seem difficult for any ingenuity to suggest a reason why the proceeding was not legal and sufficient.

But it is objected, in effect, that too much was attempted, and that the indictment is bad by reason of the recitals. If these contained anything contradictory, or repugnant to the body of the indictment, or were of a character to render unintelligible any of the material traversible matters constituting the charge, there might be force in the objection. But such manifestly is not the case. The Grand Jury have undertaken, very needlessly, it is true, to recite the history of the lost indictment. And it is also true, as suggested in argument, that this was quite foreign to their appropriate province. It was matter wholly foreign and irrelevant. And that it was so, brings it, in the strictest sense, within the definition of surplusage, which does no injury. For, in general, " *Surplusagium non nocet*, according to the maxim, *utile per inutile non vitiatur*." Matter which is merely useless never vitiates.

But it is insisted that this indictment is not found upon the evidence of witnesses sworn to testify before the Grand Jury, but solely upon the supposed action of a former Grand Jury. This, however, is a mere gratuitous assumption, not supported by the record. There is the recital, it is true, of what the jury supposed would be the effect of their finding. And they recite that they have the evidence before them to supply the lost indictment. This could have been none other than evidence of the truth of the accusation; for none other was competent to enable them to find an indictment, which should supply the

place of the lost; and this doubtless was what was meant by the recital. There is really no more reason to suppose this indictment was found upon any other evidence than the testimony of the witness whose name is endorsed upon it, than there is for supposing that any other indictment in the Court was found upon improper or incompetent evidence.

But great stress is laid by counsel for the appellee, upon the circumstance of the superfluous recitals of the indictment; and by way of affording a striking illustration of their view of what is to be regarded as the character of the finding, it is said, that if this is to be regarded as a new indictment, its recitals are as foreign to its object, as would have been the re-citation of the Decalogue, or the Declaration of Independence. Admit that they are, and what possible harm can they do. If the jury had really been as piously employed, as the case put would suppose; and had actually recited, by way of preamble and inducement, the Decalogue, and the Declaration of Independence, it will not be contended that the indictment would have been thereby vitiated and annulled. It might have been thought a profane use of sacred things, but if it had not the effect to inculcate useful lessons where they were very much needed, it surely would not have had that of subjecting the indictment to the charge of containing error of law, or of fact, or heresy of doctrine. If the effect had not been to make the offender better, the indictment, surely, would not have been made any the worse, by reason of the recitals. The recitals prove nothing more than simply that it was thought necessary thus to connect this with the former indictment. They were unnecessary, and merely useless; and cannot therefore affect the legal validity of the indictment. The repugnant may vitiate; but the merely useless, never.

We see no reason to question the legal sufficiency of the indictment, and are of opinion that the Court erred in sustaining the motion to quash. The judgment is, therefore, reversed, and the case remanded for further proceedings.

Reversed and remanded.