# THE
# TEXAS LAW REPORTER

## AUSTIN, TEXAS, MARCH, 1884.

### F. SCHULTZ vs. THE STATE.

COURT OF APPEALS, TYLER TERM, 1883.

*Substitution for lost indictments.* See the opinion for the *quaere.* Under the XIV amendment of the constitution of the Untied States, and Article 1 Section 10 of the Bill of Rights, can an indictment that has been lost be constitutionally substituted in manner provided by Article 434 of the Code of Criminal Procedure ? And note an interesting dissertation upon the subject.

*Same—Practice.* Whatever may be the proper practice with reference to the substitution of an indictment, before it has been pleaded, it is certain that it may be substituted when, as in this case, it has been read to the defendant, and he has pleaded to it. See the opinion for an elaboration of the question.

*Practice.* Article 693 of the Code of Criminal Procedure which provides that "the jury may take with them, upon retiring to consider of their verdict, all the original papers in the cause and any papers used in evidence," does not require that the jury must have the indictment when considering of their verdict. Nor is it required that the verdict shall be written upon the indictment, but only that it shall be in writing and signed by the foreman.

*Same.* Note the opinion for a showing of substitution of a lost indictment, *held* sufficient.

Appeal from Waller County.

*Harvey & Brown* for appellant.

*J. H. Burts,* Assistant Attorney General, for the State.

Opinion by Willson, J.

It appears from the record that the indictment was read to the jury on the trial, the defendant having entered a plea of not guilty thereto.

When the jury returned their verdict into court the indictment was missing. It was shown by the affidavits of the clerk of the court and of the prosecuting attorney, that when the jury retired to

consider of their verdict, the indictment was handed by the clerk to the foreman of the jury. It was on the other hand shown by the affidavits of the foreman and two other members of the jury, that the indictment was not before the jury when the case was being considered by them, nor when they made up their verdict.

The verdict was written upon a bail bond which was a paper in the case. When the loss of the indictment was ascertained, the district attorney suggested its loss to the court, and moved to substitute it, which motion was granted and the indictment was substituted. The motion in arrest of judgment was made by the defendant, and overruled by the court, which motion was based upon the ground that there was no indictment before the jury or in the court at the time the verdict was made and retured into court. The court then proceeded to enter judgment upon the verdict, and after motion for new trial being made and overruled, and after the court had pronounced judgment upon the defendant, he appealed to this court.

It is argued by the defendant's counsel that Article 434 of the Code of Criminal Procedure providing for the sustitution of an indictment is violative of the XIV amendment to the constitution of the United States and also of article 1, section 10 of our Bill of Rights. This article of our code was not contained in the original code, but was engrafted thereupon by amendment by act of February 15, 1858. Prior to the adoption of the original code, we had a statute, however, which provided for the substitution of a lost indictment, though it was not so full and explicit in prescribing manner and requisites of such substitution as is article 434 before cited and did not permit the substitution to be made except by the grand jury. Hart. Dig. Art. 464; State vs. Elliot, 14 Texas, 423. But in the State vs. Adams, 17 Texas, 242, it was held that an indictment might be substituted under the statute providing for the sustitution of lost records in civil cases. Pas. Dig. 4969, 4970.

That was a case where the indictment was for a misdemeanor, and no question was raised as to the constitutionality of the law with reference to indictments. In the State vs. Ivy, 33 Texas, 646, which was also a prosecution for a misdemeanor, it was held that it was proper to substitute an indictment, and that the substitution need not be made by the grand jury presenting another indictment, but might be made by the district attorney. There was no question raised in Ivy's case as to the constitutionality of the statute. We have

examined all the cases decided in our own state wherein the question of substitution or attempted substituion of an indictment has been before the court, and in none of them do we find the question of the constitutionality of this statuce in so far as it allows the substitution otherwise than by act of the grand jury presented or discussed. Turner vs. The State, 7 Ct. App., 569; Beasdall vs. The State, 9 Texas Ct. App., 262; Rogers vs. The State, 11 Texas Ct. App., 608.

It is therefore an open question in this state, and in the opinion of the writer, is by no means free from difficulty.

By section 10 of our Bill of Rights, no person shall be held to answer for a criminal offense, which is a felony, unless on indictment of a grand jury. Is a paper which has been substituted for the indictment by the act of the district or county attorney in the manner provided by the statute, an indictment of a grand jury ? If it is not, then is it within the power of the Legislature to provide that any person shall be held to answer for a felony upon it ? But we are not called upon by the facts in the case to determine the question as to the constitutionality of the statute referred to, and we have adverted to it mainly for the purpose of calling the attention of prosecuting attorney to the subject and suggesting to them that it is much the safer and better practice, whenever it can be done, to substitute a lost indictment by having another one returned by the grand jury, which was the common law practice, and is the only mode of supplying a lost indictment in most of the States. 1 Bish. Cr. Pro. Sec. 1400.

In the case before us the defendant was called upon to answer the original indictment, which was the act of the grand jury, and he pleaded to it as such, thereby admitting its genuiness. He was put upon his trial therefore "on an indictment of a grand jury," in compliance with the requirements of our Bill of Rights, and upon due process of law as required by section 1 of the XIV amendment to the constitution of the United States. It was not until after the defendant had pleaded to the indictment, that it was lost and substituted. This being the case the constitutional question raised by the defendant's counsel is not properly in the case. We find these questions ably discussed in two Alabama cases, where the difference between the substitution of a lost indictment before trial and its substitution after plea to the merits is clearly pointed out. In the first case, Ganaway vs. The State, 22 Alabama, 772, an indictment was

substituted before trial by a proved copy thereof. The court said : "The question here is, can an indictment be substituted before trial. * * * * The power of substitution is claimed as a power inherent in every court to supply such papers or parts of the record as may have been lost by accident or destroyed, which constituted a necessary part of the proceedings. * * * But this power does not embrace an indictment. The court has no power to make an indictment or to direct one to be made. That power resides exclusively with the grand jury. * * * In the matter of preferring an indictment, the grand jury are the judges under their oaths of the propriety of their own action. * * * The right is conceded to the prisoner to be arraigned on the indictment found by the grand jury; to have an inspection of that identical paper in order to make his objections to its form or substance, if any exist. The rule is one which tends to make solicitors careful in drawing indictments, and to make clerks extremely careful of their safe custody. We doubt whether on the whole any good would be accomplished by overthrowing a rule which is productive of these consequences. When an indictment is lost or destroyed it can generally be supplied by having a new one found by the grand jury."

Accordingly the court in that case held that the indictment could not be substituted. In Bradford vs. State, 54 Ala., 230, the indictment was lost after the trial had commenced and after the defendant's plea of not guilty thereto had been entered, and upon discovery of the loss of the indictment was substituted pending the trial of the case. Bradford's case being a parallel case to the one before us with reference to the question we are discussing, we shall extract from the able opinion of Chief Justice Brickell at length. The opinion says : "Courts of record, independent of express Legislation have power to substitute any of the files or records which may be lost or destroyed. The power is matter of necessity whether the loss occurs while the cause is *in fieri* before it has progressed to final judgment, or after such judgment has been rendered, and whether the loss is of the whole record or of papers which, when it is finally made up, will constitute part of it. In reference to civil cases the statute now provides, "if an original pleading be lost or withheld by any person, the court may order a copy to be filed in place of the original." In Ganaway vs. The State, 22 Ala., 772, the majority of the court recognizing this

power of the court in civil cases, denied the power to substitute the indictment before arraignment and trial. Since the statutes provide that if an indictment is lost, mislaid or destroyed, the court may, on satisfactory proof thereof, order another indictment to be preferred, and further provides the time elapsing between the finding of the first and the subsequent indictment shall not be competent as part of the time limiting the prosecution of the offense. Neither the decision in Ganaway's case, nor the statute, meets the question now presented—the loss of an indictment, the verity of which was indisputable. The opportunity of inspecting it had been offered, and availing himself of the opportunity, he tested, by demurrer, its sufficiency. The demurrer being overruled, the plea of not guilty—he declining, to plead was entered for him before the loss of the indictment. There can be no apprehension that an indictment against him had not been preferred by the grand jury; or that he was put on his trial to answer the genuine finding of the grand jury. The indictment having been lost after plea, and after the jury had been empanneled, and the evidence closed, the result is the prisoner was entitled to his discharge, if the continuous existence and presence in court of the indictment was essential, and the court could not by substitution supply its loss. * * * * Without infringing on the decision in Ganaway's case, or invoking the aid of the statute as matter of legal principle, jealous of the safety of the accused and preservation of all the rights granted to him, we cannot apprehend there is any real difficulty in affirming the power of the court to permit, or indeed, to compel, the substitution of the indictment under the facts found in the record with or without the consent of the accused. The indictment under our laws is an indispensable constituent of the record. To answer it the defendant is arraigned, and to it his plea is the answer, whether he voluntarily interposes it or the court, when he stands mute, intervenes for him. Before he can be arraigned and put on his trial, the record must disclose an indictment, that it is the finding of a grand jury organized in the manner prescribed by law, and by them returned into and accepted by the court. * * * * When pleaded to, either by plea of not guilty or by general demurrer, because of its insufficiency, in law its genuineness as a record stands admitted.

Neither plea would be proper or authorize the rendition of judgment unless interposed to a genuine indictment. * * * * Of

the existence of the original indictment and its verity there could be and was no controversy. The substitution was the introduction into the record of matter previously recognized by the court, and admitted by the defendant, of matter, the verity of which, had previously passed beyond controversy. It was the duty of the court to make the record speak the truth, to conform it to the facts as they existed when the defendant was arraigned, pleaded, and was put on his trial; thereby no right of the accused is imperiled, he is not subjected to any other jeopardy than that in which he was placed when put on his trial. That the grand jury had made a presentment against him; that it was returned into court; that he had admitted its verity, was already judicially ascertained, and was apparent of record. His clear constitutional right was to a verdict from the jury empannelled. The loss or destruction of the indictment could not take away this right. The State had a corresponding right that the trial should progress, and a judgment of conviction or acquittal be rendered finally determining the prosecution. Such rights cannot be impaired or destroyed by the accidental loss or the wilfull abstraction or destruction of papers pending the trial. The substitution of such papers, on certified proof by the court, is the only mode of supplying the loss, and lies within the inherent power of the court. Otherwise, the progress of a cause could be arrested, the escape of the criminal could be secured by the felonious abstraction or the accidental loss of the indictment. In Ganaway's case, and in the case provided for by the statute, the loss may be supplied by preferring a new indictment, and that, when it can be pursued is the more conservative practice, if the statute had not directed it. But when pending the trial the indictment is lost or destroyed, the defendant being in jeopardy, the result is his discharge or it must rest in the power of the court to supply the loss by substitution. Rights, neither of the State nor individuals, are lost by the loss of record or the constituents of the record in the custody of courts or public officers. We are of the opinion the court had power, without the consent of the accused, or of his counsel, to order the substitution."

If the opinion from which we have so largely copied, announces the correct practice, it is applicable here as is Alabama, and when applied to the case in hand is authority in point for sustaining the action of the court in sustaining the indictment. We think the rea-

soning of Chief Justice Brickell in Bradford's case is sound and un-
answerable, and in so far as that case holds that the indictment may
be substituted after the defendant has pleaded to it, we endorse it.
We hold therefore in the case before us that the court did not err in
permitting the lost indictment to be substituted. There is no re-
quirement of our law that the jury must have the indictment with
them when they are considering their verdict. It is provided that
"the jury may take with them when retiring to consider of their
verdict all the original papers in the cause, and any papers used as
evidence." C. C. Pro. Art 693.

This is permissive only and not mandatory. Nor is there any
requirement that the verdict of the jury shall be written upon the
indictment, but only that it shall be in writing and signed by the
foreman. C. C. Pro. Atr 705, 706.

But it is further contended, by defendant's counsel in this case,
the indictment was not substituted in the manner required by the
statute, and the decisions of this court. We find in the record a
written suggestion of the loss of the indictment, setting out the
facts and asking the court for leave to substitute, accompanying the
same with a paper which is certified by the district attorney to be a
substantial copy of the lost indictment, and following this motion for
a proposed substitute indictment is an order of the court granting
the district attorney leave to substitute and showing affirmatively
that the substitution was made.

We are of the opinion that the record shows a substantial and suf-
ficient compliance with the statute and with the decisions of this
court. Clampete vs. The State, 3 Texas Ct. App., 638; Turner vs.
The State, Texas Ct. App., 596; Beardall vs. The State, 9 Texas
Ct. App., 262; Rogers vs. The State, 11 Texas Ct. App., 608.

But if the substitution had not been made in compliance with the
statute but was made under the direction and manner satisfactory to
the court, we are of the opinion that in a case like this, where the
substitution is after plea to the indictment, it would be held suffi-
cient independent of the statute.

There are several other assignments of error some of which we
find are not supported by the record, and these that are supported
by the record are not, in our opinion, tenable. We find no error in
the record, and the judgment is affirmed.