**Jacinto SANCHEZ, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 911–82.**

Court of Criminal Appeals of Texas, En Banc.

March 19, 1986.

Kenneth A. Korth, Rex L. Easley, Jr., Victoria, for appellant.

Knute L. Dietze, Former Dist. Atty., George J. Filley, III, Dist. Atty., Victoria, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

MILLER, Judge.

Appellant was charged by indictment with the offense of murder. Trial was before a jury and appellant was convicted of the lesser included offense of voluntary manslaughter; punishment was assessed by the jury at twenty years in prison and a fine of $10,000.00.

Appeal was taken to the Corpus Christi Court of Appeals. Appellant asserted six grounds of error, all of which were overruled by the Court of Appeals. *Sanchez v. State*, 622 S.W.2d 491 (Tex.App.—Corpus Christi 1981). Appellant petitioned to this Court for discretionary review concerning his third ground of error in which he asserted that the trial court erred in allowing the State's attorney to question appellant about his silence while in custody. The Court of Appeals had concluded that the complaint was not properly before them for review because no objection was made to the prosecutor's question. We granted appellant's petition, examined the record and concluded that an objection to the complained-of question was in fact made; we then remanded the case to the Court of Appeals for reconsideration of appellant's third ground of error. *Sanchez v. State*, 628 S.W.2d 780 (Tex.Cr.App.1982). On remand, the Court of Appeals again overruled appellant's third ground of error and affirmed the judgment of the trial court, *Sanchez v. State*, 655 S.W.2d 214 (Tex.App. 1982) in a published opinion. Appellant again sought discretionary review in this Court, which we granted on the issue of whether the trial court erred in permitting the prosecutor to question appellant about appellant's post-arrest silence.

The facts regarding the questioning are as follow. Appellant, while testifying on direct examination in his own behalf, admitted stabbing the victim when it appeared to appellant that the victim was reaching for a weapon. On cross-examination, and after timely objection, the prosecutor was permitted to ask appellant whether, after his arrest and while in custody, he had told the

arresting officer that the victim was reaching for a knife or gun. Appellant responded that he had not discussed the case with the officer. The record does not indicate that appellant had received *Miranda*[1] warnings during the time in which he remained silent after his arrest.

Before the Court of Appeals, appellant argued that the trial court erred in allowing the prosecutor to question appellant concerning his post-arrest silence, citing the United States Supreme Court holding in *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976).[2] The Court of Appeals rejected this contention, finding that *Doyle* did not apply: "Without a showing that appellant had received *Miranda* warnings at the time inquired about by the prosecutor we are unable to apply the holding in *Doyle v. Ohio*." The Court of Appeals added that, based upon *Fletcher v. Weir*, 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982),[3] no violation of due process was shown.

■ As a general rule, when a defendant voluntarily takes the stand before the jury, he is subject to the same rules as any other witness in that he may be impeached, contradicted and cross-examined as to new matters. *Williams v. State*, 607 S.W.2d 577, 578 (Tex.Cr.App.1980); *Ayers v. State*, 606 S.W.2d 936, 939 (Tex.Cr.App.1980). Where there are overriding constitutional or statutory prohibitions, however, the defendant may not be treated as just another witness. *Jenkins v. Anderson*, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980); *Myre v. State*, 545 S.W.2d 820 (Tex.Cr.App. 1977); *Sensabaugh v. State*, 426 S.W.2d 224 (Tex.Cr.App.1968).

The United States Supreme Court presented an example of federal constitutional prohibitions in *Doyle*. The Court held that a defendant could not be impeached concerning his failure to relate exculpatory matters to officers after he had been arrested and after he had been advised of his *Miranda* warnings. The Court based its decision upon two factors. First, since the required *Miranda* warnings are a prophylactic means of safeguarding an arrestee's Fifth Amendment rights, silence in the wake of these warnings may be nothing more than the arrestee's exercise of these rights. Second, inherent in the *Miranda* warnings is an implicit assurance that an arrestee's silence will not be used against him in violation of due process. The Court stated:

> "[W]hile it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial."

*Doyle*, supra, 426 U.S. at 618, 96 S.Ct. at 2245. Thus, impeachment of an arrestee by the use of post-arrest, post-*Miranda* silence violates the arrestee's privilege against self-incrimination and his right to due process under the federal constitution.

The Court's holding in *Doyle* was modified in *Fletcher*, cited as authority by the Corpus Christi Court of Appeals. In *Fletcher* the prosecutor cross-examined the defendant as to why the defendant had, when arrested, failed to advance his exculpatory explanation to the arresting officers. The record, however, failed to establish that the arresting officers had given the defendant his *Miranda* rights, just as in the instant case. The Supreme Court held that:

> "In the absence of the sort of affirmative assurances embodied in the *Miranda* warnings, we do not believe that it violates due process of law for a State to permit cross-examination as to post-arrest [pre-*Miranda*] silence when a defendant chooses to take the stand. A

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); hereafter cited as *Miranda*.

2. Hereafter cited as *Doyle*.

3. Hereafter cited as *Fletcher*.

State is entitled, in such situations, to leave to the judge and jury under its own rules of evidence the resolution of the extent to which post-arrest [pre-*Miranda*] silence may be deemed to impeach a criminal defendant's own testimony."

*Fletcher*, supra, 102 S.Ct. at 1312. The Court apparently applied only the second *Doyle* factor, found that impeachment by the use of post-arrest, pre-*Miranda* silence did not violate federal due process, and left the decision as to what extent such impeachment is proper under state law to the States.

We are now called upon to resolve the question left for state determination by the Supreme Court: to what extent may a defendant's post-arrest, pre-*Miranda* silence be used to impeach the defendant with regard to exculpatory matters he or she testifies to at trial.

An examination of caselaw provides a ready answer to the question left to us by the United States Supreme Court. Based upon at least two rationales, a defendant's post-arrest silence may not be used against him at trial. First, such use would violate the accused's right to be free from compelled self-incrimination under Art. I, § 10, Texas Constitution. *Redding v. State*, 149 Tex.Cr.R. 576, 197 S.W.2d 357 (Tex.Cr.App. 1946); *Weatherred v. State*, 129 Tex.Cr.R. 514, 89 S.W.2d 212 (Tex.Cr.App.1935); *Johnson v. State*, 100 Tex.Cr.R. 215, 272 S.W. 783 (Tex.Cr.App.1925); *Skirlock v. State*, 100 Tex.Cr.R. 178, 272 S.W. 782 (Tex.Cr.App.1925). Second, rules relating to impeachment prohibit the use of such evidence since post-arrest silence is not probative as prior inconsistent conduct. *Moree v. State*, 147 Tex.Cr.R. 564, 183 S.W.2d

166 (Tex.Cr.App.1944); *Thompson v. State*, 88 Tex.Cr.R. 29, 224 S.W. 892 (Tex.Cr.App. 1920); *Gardner v. State*, 34 S.W. 945 (Tex. Cr.App.1896). We shall separately address both rationales underlying the rule.[4]

Prior to the United States Supreme Court decision in *Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964), where the Fifth Amendment to the federal constitution was made applicable to the state, Art. 1, § 10 of the Texas Constitution was used to support holdings prohibiting the use of post-arrest silence against an accused.[5] That provision provides, in pertinent part, that "an accused has the right to be free from compelled self-incrimination." Four cases are particularly illustrative. First, in *Skirlock*, supra, the defendant was convicted of burglary. The district attorney made the following comment during argument to the jury:

"Gentlemen of the jury, if you had been arrested, charged with burglarizing the home of J.B. Jones, as was the defendant, wouldn't you have explained to the officers that you had nothing to do with it, and not sit silent as did the defendant when arrested?"

In holding that the argument was improper, we stated the following:

"Under our law the defendant, when arrested, has the *unqualified right* to choose either of two courses, he may talk under the penalty of having what he says under some conditions used against him; on the other hand, he may stand mute with the full assurance that his silence cannot be used in evidence against him. According to the argument objected to, appellant chose to remain silent, and having made this choice, it was manifestly wrong for counsel to use this silence as a

**4.** A third line of cases supported the rule prohibiting the use of post-arrest silence against the accused by reference to statutory pre-cursors to the presently worded Art. 38.22, V.A.C.C.P. See *Sharp v. State*, 153 Tex.Cr.R. 96, 217 S.W.2d 1017 (1949); *Myers v. State*, 96 Tex.Cr.R. 546, 258 S.W. 821 (1924); *Denton v. State*, 42 Tex. Cr.R. 427, 60 S.W. 670 (1901); *Gardner v. State*, 34 S.W. 945 (Tex.Cr.App.1896); *Fulcher v. State*, 13 S.W. 370, 28 Tex.App. 465 (1890); *Nolen v. State*, 14 Tex.App. 474 (Tex.Cr.App.1883). Separate analysis under this line of cases is unnecessary.

**5.** The outer limitations of the Fourteenth Amendment to the United States Constitution were already applicable with regard to due process claims. See *Breithaupt v. Abram*, 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957); *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952).

circumstance of guilt." *Id.*, 272 S.W. at 783.[6]

Although the accused's right to remain silent under the Texas Constitution is not mentioned, language such as "unqualified right" and "silence cannot be used in evidence against him", implicitly invokes constitutional precepts.

Second, in *Johnson*, supra, the defendant was convicted of murder. An eyewitness to the killing testified that the defendant was handling a gun which accidently discharged, killing the deceased. The State sought to contradict this testimony by evidence of the defendant's failure to attend the funeral or to explain the killing. We stated:

> "We have here a clear case of where silence was the sole substance of [the defendant's] sinning, and under the provisions of our Bill of Rights, which provides that a party charged with a crime shall not be forced to give evidence against himself, we hold that the mere silence of a party under the circumstances above detailed in this case, cannot be used against him, and its admission in evidence is reversible error." *Id.*, 272 S.W. at 784.

Third, in *Redding*, supra, the defendant was charged with possessing intoxicating liquor for purposes of sale in a dry area. After the defendant testified at trial that he had obtained the whiskey for medicinal purposes, the State was allowed on cross-examination to show that he did not advance that explanation to the officers at the time of his arrest. We stated: "The accused has a right to keep silent *when arrested*, and the fact of such silence may not be shown by the State, either in testimony or in argument as a guilty circumstance." *Id.*, 197 S.W.2d at 357, citing *Weatherred*, supra.

Fourth, in *Boggess v. State*, 158 Tex. Cr.R. 466, 257 S.W.2d 111 (1953), the defendant was charged with driving while intoxicated.

The defendant testified that he had experienced a diabetic black-out at the time the officers observed his erratic driving. On cross-examination, the defendant was required to testify that, at the time of arrest, he did not inform the officers of the black-out. We stated that "the rule is well settled that, *after arrest*, the State cannot avail itself of the silence of the accused as evidence of guilt or as destructive of the explanation of his conduct." *Id.*, at 111, citing *Redding*, supra.

As indicated by the preceding four cases, use of a defendant's post-arrest silence against him at trial has been prohibited on purely state constitutional grounds. Moreover, the use of such evidence was prohibited without reference to whether the defendant had been advised of his right to remain silent. In the case at bar, the State urges us to restrict application of this prohibition according to the *Doyle/Fletcher* analysis: only where the record affirmatively shows that the defendant was advised of his right to remain silent will post-arrest silence be considered impermissible evidence for impeachment purposes. We decline to so restrict the present rule.

Although the State's position seemingly passes federal constitutional muster, the State's position does not comport with the Texas privilege against self-incrimination. In *Doyle* and *Fletcher*, the United States Supreme Court held that impeachment through the use of post-arrest, pre-*Miranda* silence did not violate due process and implicitly did not violate the Fifth Amendment to the federal constitution as well. In the instant case, the State maintains that, according to *Fletcher*, the accused's right to remain silent (and assumedly the right not to have that silence used against him) arises at the moment the accused is advised of his rights. We find this to be an inadequate formulation of the privilege against self-incrimination under our law.

■ An accused's right to be free from compelled self-incrimination under the Texas Constitution arises at the moment an

arrest is effectuated. The court in *Skirlock*, supra, referred to the "unqualified right" to remain silent at the time of arrest. *Id.*, 272 S.W. at 783. The *Redding* court stated that the right to remain silent arises when the defendant *is arrested*. *Id.*, 197 S.W.2d at 357. Under the decisions of this Court, once the State has restrained the liberty of the defendant to the degree that an arrest has occurred, privilege attaches to its fullest extent. Conversely, the right to remain silent does not arise when arresting officers deign to verbalize that right, but rather at the very moment the arrest is accomplished. Since the defendant's right against self-incrimination arises when he is arrested, post-arrest silence is presumed an exercise of that right. The State may not, therefore, violate the defendant's right against self-incrimination by the use of post-arrest silence. Accordingly, we hold that pursuant to Art. I, § 10 of the Texas Constitution, when the defendant is arrested, he has the right to remain silent and the right not to have that silence used against him, even for impeachment purposes, regardless of when he is later advised of those rights.

We have had previous occasion to compare the Texas and federal constitutional provisions vis-a-vis the privilege against self-incrimination. In *Olson v. State*, 484 S.W.2d 756 (Tex.Cr.App.1969), Presiding Judge Onion, writing for the Court on motion for rehearing, stated that the Texas constitutional privilege against self-incrimination was comparable in scope to the Fifth Amendment to the federal constitution. Judge Onion, however, in noting the difficulty in determining the exact scope of the Texas privilege, stated:

"Of course, the history of the privilege does not finally settle its scope or policies and the strength of these underlying policies will largely determine whether future construction will be restrictive or expansive."

*Olson*, supra at 762. See also *Bell v. State*, 582 S.W.2d 800 (Tex.Cr.App.1979); *Hitt v. State*, 548 S.W.2d 732 (Tex.Cr.App.

1977); *Clinard v. State*, 548 S.W.2d 716 (Tex.Cr.App.1977); and *Dudley v. State*, 548 S.W.2d 706 (Tex.Cr.App.1977).

The *Olson* case and its progeny indicate that in some instances the Texas and federal privileges against self-incrimination are co-extensive. As stated in *Olson*, supra 484 S.W.2d at 762: "As to the outer reaches of 'due process' or 'self-incrimination,' we give great weight to the reasonings and holdings of the United States Supreme Court. Nevertheless, as to the true scope of the Texas Constitution, we must ultimately follow our own lights."

With regard to the use of post-arrest, pre-*Miranda* silence against the accused, however, we cannot equate the two privileges and yet accord the accused his rights as already set down by prior state caselaw. To do so would require us to overrule a long line of cases decided upon state constitutional and evidentiary [7] grounds.

We reiterate the need, however, for a dynamic approach to defining the limits of our state privilege as observed by Presiding Judge Onion in *Olson*, supra. Each issue must be decided according to the policies and considerations germane at the time. Accordingly, our holding which gives a broader construction to the state privilege than that given by the United States Supreme Court to the federal privilege is restricted to the issue now before us.

■ Even if we construed the Texas constitutional privilege against self-incrimination to be equal to that afforded by the federal constitution, impeachment through the use of post-arrest silence remains improper according to Texas evidence law. When the State seeks to impugn the explanation of the defendant offered at trial by showing that the defendant failed to advance his position at the time of the arrest, the State is essentially impeaching the defendant through the use of prior inconsistent conduct. The general rule concerning the use of silence as prior inconsistent con-

7. See discussion, infra.

duct was set forth in *Franklin v. State*, 606 S.W.2d 818 (Tex.Cr.App.1979):

"[I]t is a general rule of evidence that the prior silence of a witness as to a fact to which he has testified, where such silence occurred under circumstances in which he would be expected to speak out, may be used to impeach the witness during cross-examination."

*Id.*, at 825, citing 3A Wigmore, Evidence, § 1042 (Chadbourn rev. 1970). See also Wharton's Criminal Evidence, Impeachment of Witnesses § 470, Vol. II, 13th ed., Torcia, 1972. Silence may, therefore, be used as evidence of prior inconsistent conduct only if two requirements are met: the person must have been expected to speak out under the circumstances, and the fact that he or she did not speak out must actually be inconsistent with a later position. See also *Williams v. State*, 607 S.W.2d 577 (Tex.Cr.App.1980).

■ There is authority for the contention that a defendant, once placed under arrest, is not expected to speak out. In *Meyers*, supra, the defendant was charged with unlawfully manufacturing liquor. At trial, the defendant testified that he had seen three men near the stills involved. On cross-examination, the State was permitted to ask the defendant why, at the time of arrest, he had not mentioned the three men to the officers. We held that proof of silence at the time of arrest was prohibited since the defendant was not called upon to speak out while under arrest, and proof of his failure to do so should have been rejected.

In *Moree*, supra, we indicated that an arrestee is under no burden of replying to statements made in his presence which call for a reply. Moreover, merely having the opportunity to say something does not constitute a circumstance in which one would be expected to speak out. *Franklin*, supra 606 S.W.2d at 848.

Given that an arrestee is not expected to speak out while under arrest, the fact that he does not do so would not be used against him as evidence of prior inconsistent conduct. Hence, evidence of post-arrest silence fails to satisfy the first requirement of impeachment by prior inconsistent conduct.

■ Even if we were to assume, and we do not, that a person is expected to speak out after arrest concerning exculpatory matters, the second requirement of prior inconsistent conduct is not satisfied. As previously discussed, in order for impeachment with prior inconsistent conduct to be permissible, the prior conduct must be inconsistent with some later position taken at trial. The United States Supreme Court acknowledged this requirement under the Federal Rules of Evidence in *United States v. Hale*, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975), where the court stated:

"If the government fails to establish a threshold inconsistency between silence ... and later exculpatory testimony at trial, proof of silence lacks any significant probative value and must therefore be excluded." 422 U.S. at 176, 95 S.Ct. at 2136.

Given this second requirement, it is clear that silence following arrest is, at best, ambiguous. In *Thompson*, supra, the Court stated:

"It will be noticed that this [evidence of silence following arrest] was not the offered testimony of a statement that appellant had made, but it was proving the fact that he made no statement, especially the statement with reference as to how the shooting occurred. We are of the opinion that the court was in error in requiring appellant to answer the question. He was asked nothing, and said nothing about the matter to the sheriff. It was simply a question of silence. It is therefore we think unnecessary to discuss what might have been the attitude had he made a confession while under arrest and unwarned. That involves a different question. Here we have the simple question presented that appellant may be impeached by failing to make a statement, and in keeping silent at the time of his arrest and while under arrest. We do not think this is permissible."

*Id.* 224 S.W. at 893. Although the *Thompson* case referred to *Ripley v. State*, 58 Tex.Cr.R. 489, 126 S.W. 586 (1910), which involved the confession statute, the *Ripley* case was merely exemplary and was not urged as authority. The decision in *Thompson* may more clearly be associated with impeachment concepts, rather than confession law, since the holding focused on the ambiguity attendant to post-arrest silence. Moreover, the United States Supreme Court acknowledged the "insoluble ambiguity" of post-arrest silence in both the *Doyle* and *Fletcher* decisions. See *Fletcher, supra,* 102 S.Ct. at 1311.

Given the inherent ambiguity of post-arrest silence, such silence cannot be considered inconsistent with defensive matters later raised at trial. Absent a showing of actual inconsistency, post-arrest silence is not probative as evidence of prior inconsistent conduct;[8] therefore, impeachment through the use of such evidence is improper.[9]

◼ Accordingly, we hold that a defendant may not be impeached through the use of post-arrest, pre-*Miranda* silence since such impeachment violates the defendant's right to be free from compelled self-incrimination, and also since such impeachment is improper from an evidentiary standpoint. We further agree with Judge Clinton's concurring opinion and incorporate its reasoning herein. We decline to adopt the federal standards set forth in *Doyle* and *Fletcher,* supra. The trial court in the instant case,

therefore, erred in permitting the prosecutor to cross-examine appellant regarding his post-arrest silence, since the State was thereby permitted to violate appellant's rights against self-incrimination.

The judgments of the Court of Appeals and the trial court are therefore reversed and the cause is remanded to the trial court for action not inconsistent with this opinion.

ONION, P.J., concurs in the result.

CLINTON, Justice, concurring.

In pertinent part the Fifth Amendment provides:

"nor shall [any person] be compelled in any criminal case to be a witness against himself ..."

Article I, § 10, Texas Bill of Rights, provides in pertinent part:

"[An accused] shall not be compelled to give evidence against himself ..."

So also does Article 1.05, V.A.C.C.P.

The core of § 10 privilege that one may not be compelled to give evidence against oneself is the right to remain silent. *Stanton v. State,* 94 Tex.Cr.R. 366, 252 S.W. 519, 521 (1923); *Butler v. State,* 64 Tex. Cr.R. 482, 142 S.W. 904, 907 (1912); *Ex parte Park,* 37 Tex.Cr.R. 590, 40 S.W. 300 (1897).[1]

The thesis of the dissenting opinion seems to be "the rule against the use of a

---

**8.** As previously discussed, the federal constitution permits impeachment with post-arrest, pre-*Miranda* silence, but prohibits impeachment with post-arrest, post-*Miranda* silence. The inherent ambiguity of post-arrest, post-*Miranda* silence was one reason supporting the distinction. We see no compelling reason to hold that an arrestee's silence is rendered any less ambiguous, so as to permit impeachment use of such silence, simply because the arrestee was advised of his right to be silent. Conversely, there is little in the act of advising an arrestee of his right to remain silent that would render that arrestee's silence any more clear.

**9.** The practical effect of any holding to the contrary would serve to penalize knowledgeable

defendants who are familiar with the right to remain silent. The presumption in *Doyle* that silence is an exercise of the right to remain silent should not be applied only to the advantage of persons uneducated in legal matters and to the disadvantage of those with what surely must be, by now, common knowledge that an arrestee has the right to remain silent.

**1.** As we shall see, this privilege against self-incrimination is not confined to an accused in a criminal prosecution; it extends as well, for but one example, to a witness in any type of case and in many kinds of administrative proceedings. See generally Interpretive Commentary following § 10. *Malloy v. Hogan,* 378 U.S. 1, 8, 84 S.Ct. 1489, 1493–1494, 12 L.Ed.2d 653 (1964).

defendant's post-arrest originated from the rule that *silence was an act* and, as such, was to be treated as a confession and governed by the statutes relative to admission of confessions."[2] *Ergo* meaning, scope and extent of our constitutionally guaranteed privilege against selfincrimination depend upon rules of evidence legislatively fashioned. Whatever may be the rule when an accused has *not* remained silent—and much of the discussion in the prior opinions quoted at length in dissent was to equate "acts performed" and "confessions made"—the notion that "silence" is an "act" is a specious rationale for that conclusion.

Before and after the "Old Code" "[i]n the administration of the criminal law, the common law, where not modified by the constitution or statute has been held to furnish the rule of decision, as well in matters of practice as principle." *Hyde v. The State,* 16 Tex. 446, 455 (1856). That was equally true in construing the constitutional right to remain silent. Thus it was held that any witness was immune from compulsion to answer a question tending to degrade him or subject him to a civil or criminal suit. See, e.g., *Simons v. Simons,* 13 Tex. 468 (1855); *Jordan v. The State,* 14 Tex. 426 (Ct.App.1855); *Floyd v. The State,* 7 Tex. 215 (1851), quoting and relying on the opinion of Chief Justice Marshall in *The United States v. Burr,* 1 Rob.R. 207, and the opinion of the court in *The People v. Mather,* 4 Wend. 254, as "a true exposition of the rule." *Id.,* at 216; *Holman v. Mayor,* 34 Tex. 668, 673 (1871) (contempt order void when made by Mayor after witness refused to answer questions regarding occurrences in certain house leading witness to believe it was house of prostitution, citing *Simons,*

supra); *Owen v. The State,* 7 Tex.App. 329, 334 (Ct.App.1879). In *Cain v. The State,* 18 Tex. 387, 389–390 (1857), it was consulted regarding confessions.

In short, early on Texas courts developed a body of common law for application of this privilege, derived largely from judicial decisions in other jurisdictions and from learned commentators. That common law construction of the constitutional guarantee was to be applied independently of provisions of the Old Code and its successors.[3]

Similarly, in *Nolen v. The State,* 14 Tex. App. 474 (Ct.App.1883), which the dissenting opinion identifies as the seminal decision that "acts as well as words would be treated the same under the statute, then Article 750, Code of Criminal Procedure," from its reading of common law found in learned treatises the Court did indeed overrule prior opinions distinguishing acts and words: "Acts, it is said, speak louder than words, and this being generally true they should be regarded as confessions, as much so as words, and the law does so regard them."

While Nolen may have pointed in silence to the hill where body of deceased had been found, the opinion treats his act of pointing—*not his silence at the time.* The decision ultimately turned on whether he had been "cautioned," as article 750 then required. See article 750, set out in *Butler v. State,* 493 S.W.2d 190 (Tex.Cr.App.1973), quoted in dissenting opinion at page 588.

As to the purpose for which the dissent has appropriated it, the lesson of *Nolen* is that neither acts nor words amounting to a confession before being cautioned were admissible under article 750. It teaches nothing about silence being treated as words or

---

**2.** All emphasis is mine throughout unless otherwise indicated.

**3.** In *Wood v. State,* 22 Tex.App. 431, 3 S.W. 336, 338 (1886), however, the Court did both. Under "common law rules" followed by the Court testimony given by one at an inquest is not thereafter admissible against him as an accused—the "correct rule [being] supported by the weight of authority," *viz:*

"It will be seen that the fact of arrest or no arrest does not figure in this proposition. Whether the party be under arrest, whether by warrant or without warrant, or is not under arrest, if he is charged or suspected of the crime, and knows himself to be charged or suspected, his testimony taken before the ... inquest is not admissible against him."

*Id.,* at 338. Separately, the Court examined the statute and, finding he was "in arrest, and, not being cautioned," reached the same result. *Ibid.*

acts constituting a confession, however, and its rationale for equating acts and words is inapposite to silence.

On the matter of "silence" the only value of *Nolen* to the dissent is its reference to a treatise by Mr. Wharton, *viz:*

> "Mr. Wharton says that 'confessions may be by acts as well as words' (Whart. Cr.Ev., sec 683); and even silence, *under certain circumstances,* is taken as a confession. (*Id.,* sec. 679)."

Mr. Wharton was not writing about article 750 or any other Texas statute. We need to know what those circumstances are—as prescribed by common law interpretation.[4]

In § 679, cited in *Nolen,* supra, Mr. Wharton is discussing a general rule of evidence regarding silence. He says that statements made to another who listens in silence and interposes no objection may be put in evidence "whenever silence is of such a nature as to lead to the inference of assent." Accord: *Gilford v. State,* 78 S.W. 692 (Tex.Cr.App.1903) (Testimony recounting statements made by another "in the presence and hearing of appellant, *who was not under arrest*" clearly admissible, *id.,* at 693). However, in § 680 he explains that such a silent party must be in a position to respond, and when he comes to one in arrest, Mr. Wharton states a different rule, *viz:*

> "... nor can silence, *when a party is under arrest,* be used as sustaining the hypothesis of acquiescence."

Please notice that under the common law reported by Mr. Wharton the status of an accused is simply that he be "under arrest," and to the significance of that I now turn.

John A. Gardner was arrested in Dallas for killing another. To Sheriff Ben E. Cabell he claimed to have been at several other places on the night and at the time of that homicide, so Sheriff Cabell took Gardner to those places and presented him to persons staying there or doing business there. In the presence of Gardner each person stated to Sheriff Cabell that Gardner had not been there at the time he told Sheriff Cabell he had been. Gardner made no reply to any of that. At trial all that Sheriff Cabell did and all that those persons stated to him and silence of Gardner were introduced in evidence "as confessions of appellant to the truth of those statements."

In *Gardner v. State,* 34 S.W. 945 (Tex. Cr.App.1896), one question Judge Hurt noticed for the Court is, as framed by him:

> "The appellant being *under arrest* for this crime (*whether cautioned or not*), can his silence or failure to deny statements made in his presence be used against him, as a confession of the truth of the statements?"

*Id.,* at 945–946. According to the thesis of the majority, if he had been cautioned pursuant to former article 750, the answer is "yes." However, the answer by the Court is "no"—"these facts, and especially the silence of the appellant, [were not] competent evidence." *Id.,* at 946.

As had been its wont, see *ante,* p. 577, the Court looked to decisions in other jurisdictions and *findings by Mr. Wharton* in § 680 to reach its conclusion, *viz:*

> "We deem these authorities sufficient to support the rule that, if the party is under arrest, silence cannot be used to support the hypothesis of consent to statements made in his presence by others. From the bill of exceptions, we infer that the learned judge who tried this case admitted this evidence because *appellant had been cautioned.* Our Code of Criminal Procedure (article 750) provides that 'the confession shall not be used if at the time it was made the defendant ... is in custody of an officer, unless such confession ... be made voluntarily after having first been cautioned

---

4. The treatise extant when *Nolen* was decided in 1883 is not immediately available. However, Mr. Wharton published his next edition in 1884 —just four years after the other. See Preface, Wharton's Criminal Evidence (Ninth Edition).

Since § 683 of the latter also discusses acts and words as confessions, I take it that he did not change section numbers in this part; from them my findings and observations in the text following are derived.

that it may be used against him,' etc. As above stated, the learned trial judge admitted in evidence the silence of appellant upon the ground that the appellant had been cautioned. We are of the opinion *that appellant had been cautioned was an ADDITIONAL reason, to being under arrest, for excluding his silence.* * * * * We are of the opinion that, *whether cautioned or not, his silence should not have been received in evidence against him."*

*Ibid.* [all ellipsis mine].[5]

In *Stanton v. State,* 94 Tex.Cr.R. 366, 252 S.W. 519 (1923), another sheriff was asked by the prosecutor, "When you opened the flap [to a tent] and found the still and liquor there, did he make any explanation to you or claim innocence?" Sheriff Head answered, "No sir; he did not. I asked him if he wanted to make a statement after I brought the still in and brought him downstairs in the jail in the presence of the county attorney, and he said he did not want to make any." The objection to that testimony was "because he was under arrest." *Id.,* at 520.

Writing for the Court, Presiding Judge Morrow noted the effect and sequence of things, *viz:*

"The effect and apparent purpose of the question was to elicit the fact that appellant did not specifically disclaim his innocence at the time; in other words *to make his silence speak against him.* The answer to the question showed that, while he was *silent at the time inquired about,* he *at another time and place,* while he was formerly under arrest, *expressly* refused to make any statement." *Id.,* at 521. Characterizing the answer as unresponsive, Presiding Judge Morrow said it was not admissible "under any circumstances developed by the record."

"It was violative of the statute against proving unwarned *statements* while under arrest. *It was ALSO contrary to the constitutional inhibition* against requiring witness to give evidence against himself. At the time to which the answer given by the sheriff refers the appellant had a *right to be silent,* and the law did not permit his silence to be used against him. * * * * [U]nder the circumstances it was incumbent, we think, upon the trial court to exclude it upon the objection made, namely, *that the appellant was under arrest."*

*Id.,* at 521 [ellipsis mine].

What *Gardner* and *Stanton* and their host of progeny find or hold is that the right to remain silent under arrest is of constitutional dimension, and the protection thus afforded is not at all dependent upon statutory support.[6]

Thus the thesis underlying the conclusion of the dissent is demonstrably untenable. Silence is a constitutional guarantee. The constitutional protection provided by § 10 forbids using mere silence against an accused under arrest, including for impeachment.

I join the judgment of the Court.

---

5. Explaining why the fact that he had been cautioned was an additional reason, Judge Hurt wrote:

"He had been warned that if he said anything it might be used against him. He obeyed the caution, and because he did obey his silence was admitted in evidence and used as a confession of the truth of the statements made by others."

6. Accord: *Wright v. State,* 37 Tex.Cr.R. 627, 40 S.W. 491, 494–495 (1897); *Guinn v. State,* 39 Tex.Cr.R. 257, 45 S.W. 694, 695 (1898); *Denton v. State,* 42 Tex.Cr.R. 427, 60 S.W. 670, 672–673 (1901); *Funderburk v. State,* 61 S.W. 393, 394 (Tex.Cr.App.1901); *Weaver v. State,* 43 Tex.Cr.R. 340, 65 S.W. 534, 537 (1901); *Simmons v. State,* 50 Tex.Cr.R. 527, 97 S.W. 1052, 1053 (1906); *Ripley v. State,* 58 Tex.Cr.R. 489, 126 S.W. 586, 587 (1910); *Couch v. State,* 58 Tex.Cr.R. 505, 126 S.W. 866, 867–868 (1910); *Young v. State,* 91 Tex.Cr.R. 511, 240 S.W. 930, 935 (1922) (Opinion on Motion for Rehearing); *Sharp v. State,* 153 Tex.Cr.R. 96, 217 S.W.2d 1017, 1018 (1949); see *Hicks v. State,* 493 S.W.2d 833, 836 (Tex.Cr.App.1973) and *Conway v. State,* 625 S.W.2d 35, 38–39 (Tex.App.—Eastland 1981) PDR refused.

Those decisions not only "indicate otherwise" but make clear that constitutionally guaranteed "silence" under arrest is not "to be treated as a confession and governed by statutes relative to admission of confessions," as the dissent would have it.

McCORMICK, Justice, dissenting.

In considering how the Texas courts are to treat post-arrest/pre-*Miranda* statements of an accused, the majority concludes that our caselaw provides a ready answer to the question. Unfortunately, in reaching this conclusion, the majority looks to the results of that caselaw and not the reasoning. That caselaw, which the majority sets forth, demonstrates that the prior conclusions were based not on Article I, Section 10 of our Constitution, but on statutory restrictions imposed by the Legislature which have since been repealed.

To put the issue in its proper historical context, it is necessary to examine the cases cited by the majority and discuss their viability under today's caselaw and statutes.

The majority places much emphasis on the rule that a defendant's post-arrest silence may not be used against him because of his right to be free from compelled self-incrimination, citing Article I, Section 10, Texas Constitution, and *Skirlock v. State*, 100 Tex.Cr.R. 178, 272 S.W. 782 (1925). As will be seen post, the majority overlooks that the instant case is *not* a situation where the State attempted to use the silence as substantive evidence of appellant's guilt, but as impeachment to test his credibility as a witness. As noted in the majority opinion, *Skirlock* stands for the proposition that it is wrong for the state to use a defendant's silence as a *circumstance of guilt*. The *Skirlock* court found this to be especially egregious since the circumstance was presented to the jury during final argument through unsworn statements of state's counsel, a situation not even remotely akin to the case at bar. *Skirlock* cites *Ripley v. State*, 58 Tex.Cr.R. 489, 126 S.W. 586 (1910), as authority.

*Ripley* was a conviction for manslaughter where the Court noted that "the lines are very sharply drawn between the state and appellant as to who was the aggressive party in the difficulty." During trial, the prosecutor asked the arresting officer whether the defendant made a statement following his arrest, to which the officer responded, "No, sir." The objection of defense counsel was overruled. The Court reversed noting that "silence of a defendant under arrest cannot be used as evidence against him." *Ripley*, like *Skirlock*, was again a situation where the prosecution sought to use the post-arrest silence of the accused as affirmative evidence of his guilt—not as impeachment. *Ripley* relied on a number of prior opinions, the earliest of which is *Fulcher v. State*, 28 Tex.App. 465, 13 S.W. 750 (1890).

*Fulcher* quickly places the *Skirlock* line of cases in perspective:

"Defendant's second bill of exceptions shows that the state's witness Wells, on his examination in chief, was permitted, over defendant's objections, to testify that 'the day after Beemer was killed, as I afterwards ascertained, I returned to my home about the middle of the afternoon. I found there Jeff Boon and Tom Stewart and [defendant] T.J. Fulcher, and had him in custody when I arrived. I afterwards heard Stewart say to Fulcher, "We have arrested you for killing Beemer last night;" whereupon Fulcher seemed agitated, and turned pale.' This testimony was objected to because the defendant was under arrest at the time. The court in explaining this bill states that he limited the witness' testimony to the fact as to whether or not any visible impression was made on defendant when he was charged with the murder. Had defendant not been under arrest, there is no question but that his acts and conduct, as well as appearance when charged with the murder, would have been admissible as evidence against him. *Noftsinger v. State*, 7 Tex.App. 302. And even after arrest it was formerly held, in the cases of *Cordova v. State*, 6 Tex.App. 208, and *Handline v. State*, Id. 348, that 'the acts and conduct of a defendant in arrest, either before or after being accused of the crime, may, though not *res gestae*, be competent evidence against him as indicative of a guilty

mind.' These decisions were based upon the rule announced in Rosc.Crim.Ev. 17–19; and the same rule is held in *Brownell v. People*, 38 Mich. 732, (which is a case directly in point,) and in *Greenfield v. People*, 85 N.Y. 75. It is also the rule announced in a late case in Kansas, (*State v. Baldwin*,) reported in full in [36 Kan. 1] 12 Pac.Rep. 318. But a different rule was announced by this court in *Nolen's Case*, 14 Tex.App. 474, and it was there held that 'where the confessions of a defendant under arrest are inadmissible against him because made while he was uncautioned, his acts, if tantamount to such a confession and done under similar circumstances, are likewise inadmissible.' This decision, which practically overruled the Cordova and Handline Cases, since its announcement has been followed and recognized as the rule in this state. *Carter v. State*, 23 Tex.App. 508, 5 S.W.Rep. 128. Under the rule as it now obtains the evidence complained of was illegal and inadmissible. This error will necessitate a reversal of the case. *McWilliams v. State*, 44 Tex. 116." *Fulcher*, at 751.

As is readily seen, the genesis of this line of cases was recognized as *Nolen v. State*, supra. Nolen was a murder case where the State, over objection, was allowed to use the acts of the defendant as substantive evidence of his guilt. After a complete review of the cases dealing with post-arrest self-incrimination, the Court concluded that acts, including silence, which occur after arrest but prior to magistrate warnings, were to be treated as confessions, and to be admissible had to come within one of the exceptions to the statute relating to admissibility of confessions.

"We find in the record the following bill of exceptions: 'Be it remembered that on the trial of the above styled cause, and after the State and defendant had closed their evidence, and the opening arguments for both State and defendant had been made, the State, through her district attorney, asked leave to recall the witness Henry Shane, and to prove the acts of defendant when brought back to the spot where the homicide was committed; to which proceeding the defendant, by counsel, objected, and said objection being overruled by the court, said witness was recalled and was asked by the district attorney what was said to defendant after he was brought back to said spot where the murder was committed. Witness replied that he asked the defendant what had been done with the body, to which defendant replied by pointing to the hill where the dead body of deceased had been previously found. Defendant was under arrest at the time, and had been for two or three days previously. Said defendant and Swift had been handcuffed together, and part of the time tied with a rope. Witness had talked with defendant about the murder of deceased, and defendant was informed of what he was under arrest for. Defendant was not cautioned that his admissions might be used against him. To all of which proceedings, and to the testimony of said recalled witness, defendant, by counsel, excepted,' etc.

"It was within the discretion of the court to admit further testimony necessary to a due administration of justice, at any time before the argument of the cause was concluded, and the exercise of such discretion will not be revised by this court unless it plainly appears to have been abused. (Citations omitted.)

"But the question remains, was this evidence admissible at any time? It is very clear that under the circumstances, if the defendant had confessed his guilt, such confession would not have been admissible against him. It was so determined by this court on a former appeal of this case. (*Nolen v. The State*, 8 Tex.Ct.App., 585.) But does the rule which excludes *confessions* which are not brought within the exceptions of the statute (Code Crim.Proc., Art. 750), also apply to and exclude the *acts* of the defendant done under the same circumstances? This is the question directly presented by the defendant's bill of ex-

ception, and is one upon which we find some conflict of opinion. It was the opinion of the learned judge who tried this case, that, while the statements or confessions of defendant made while under arrest were not admissible against him, yet the *acts* performed by him were admissible; and, holding this view, he allowed the prosecution to introduce the evidence objected to by defendant, and set forth in the bill of exception we have quoted. This opinion of the learned judge was no doubt based upon the opinion of this court in *Rhodes v. The State,* 11 Texas Court of Appeals, 563, where it is said: 'A distinction has always been made between *acts performed* and *confessions made* by a defendant while under arrest. The former are admitted, whilst the latter are not, unless coming strictly within the letter of the statute.' " (Emphasis in original) *Nolen,* 14 Tex. App. at 479–480.

The Court then went on to examine the prior cases as well as the treatises and concluded that acts as well as words should be treated the same under the statute, then Article 750, Code of Criminal Procedure.

"Mr. Wharton says that 'confessions may be by *acts* as well as *words*' (Whart.Cr.Ev., sec. 683); and even silence, under certain circumstances, is taken as a confession. (Id., sec. 679.) Suppose a prisoner charged with murder is asked the question 'Are you guilty of murder?' and instead of saying 'I am' he makes an affirmative movement of his head. Would this movement of the head be admissible evidence, while his confession by words would be inadmissible? Suppose he were told, 'You murdered the deceased; you crushed in his head with an axe; you dragged him into yonder thicket and left him, after having robbed him,' and in response to this charge the prisoner had not uttered a word, but had nodded his head in assent to the truth of the same; will it be contended that the *act* of nodding his head, because it is an *act* and not a statement or declaration, is competent evidence against him, when if he had confessed the charge by *words*

such confession would have been excluded? We are unable to perceive the reason of the rule which admits the *acts* while it excludes the *words. Acts,* it is said, speak louder than *words,* and this being generally true, they should be regarded as confessions, as much so as words, and the law does so regard them. *Acts* are but a kind of language, expressing the emotions and thoughts of the person performing them, more forcibly and convincing sometimes than words, but still, like words, only a medium through which the inward feelings, thoughts or intents of the person are outwardly indicated.

"In the case before us, the prisoner pointed in the direction of where the body of deceased had been found, when asked what they had done with deceased. Instead of this response to the question, suppose he had said: 'We left the dead body of deceased on yonder hillside.' Would this answer have been admissible? We think not under the long line of decisions in this State. How, then, can it be said that his gesture is competent evidence? Upon what principle is this distinction founded? Can a confession be indirectly admissible which would not be directly so? Would not such a construction of the law defeat its purposes? Would it not probably lead to great evils? Under such a rule, extorted confessions of guilt, made by nods, winks, gestures, and other *acts* would be frequently paraded in cases to supply the absence of sufficient evidence to establish the guilt of the accused. Such evidence would be easily attainable in most cases, and would be as unreliable and objectionable in every respect as confessions by words. As said by Roscoe and Greenleaf: 'The influence which might produce a groundless confession might also produce groundless conduct.' (Rosc.Cr.Ev., 51; 1 Greenl.Ev., sec. 232.) In this case, for illustration, the same influences which might have prompted the defendant to confess by words that he had committed the murder might have also prompted

him to point in the direction of where the dead body of the murdered man had been found. Both the above quoted standard authors lay down the rule that the *acts* of the prisoner are in such cases placed upon the same plane with his *words,* and where the one is inadmissible so also is the other.

"We are of the opinion that the rule announced in the Rhodes case is in conflict with the authorities and with the reasons which support the law governing the admissibility of confessions, and we must therefore overrule that case upon this subject." (Emphasis in original). *Nolen,* at 482–483.

From the above, it is easily seen that the rule against the use of a defendant's post-arrest silence originated from the rule that silence was an act and, as such, was to be treated as a confession and governed by the statutes relative to admission of confessions. None of the cases cited by the majority, when carefully considered, would indicate otherwise. When we consider the statutory development of the rules relating to confessions, we quickly see that the former prohibitions have been significantly changed in recent legislative sessions. Present Articles 38.21 and 38.22, V.A.C. C.P., are the successors to the statutes upon which these rules developed.

Retracing this statutory history, Presiding Judge Onion, in *Butler v. State,* 493 S.W.2d 190 (Tex.Cr.App.1973), noted:

"To understand the nature of the question presented, the history of our confession statutes become important.

"In *Pierson v. State,* 145 Tex.Cr.R. 388, 168 S.W.2d 256 (1943), part of that history is set forth, as follows:

" 'The admission in evidence of a confession of one accused of crime has always been controlled by statute in this state.

" 'Under the Code of Criminal Procedure of 1857, known as the "Old Code", Article 661 thereof reads as follows: "The confession of a defendant may be used in evidence against him if it appear that the same was freely made without compulsion or persuasion, under the rules hereafter prescribed." Said Article has remained unchanged throughout the years and appears as Art. 726 of our present Code of Criminal Procedure. Article 662 of the Old Code read as follows: "The confession shall not be used, if, at the time it was made, the defendant was in jail or other place of confinement, nor while he is in custody of an officer, unless such confession be made in a voluntary statement of the accused, taken before an examining court in accordance with law, or be made voluntarily after having been first cautioned that it may be used against him."

" 'Under this Article, oral confessions made in accordance with the provisions thereof were admissible in evidence. However, as to such confessions, the court stressed that great caution should be exercised because such were "so liable to be misunderstood, so easily fabricated, and so hard to be contradicted." *Gay v. State,* 2 Tex.App. 127; *Riley v. State,* 4 Tex.App. 538; *Cain v. State,* 18 Tex. 387.

" 'Said Art. 662 of the Old Code was later amended by adding thereto the following language: "or unless in connection with such confession he make statement of facts or of circumstances that are found to be true which conduce to establish his guilt, such as the finding of secreted or stolen property, or instrument with which he states the offense was committed."

" 'Said Art. 662 of the Old Code as thus amended appeared as Art. 750, C.C.P. of 1879, and remained unchanged until amended, by Chapter 118, Acts of the Regular Session of the 30th Legislature, in 1907, to read as follows: "The confession shall not be used if, at the time it was made, the defendant was in jail or other place of confinement, nor while he is in the custody of an officer, unless made in the voluntary statement of accused, taken before an examining court in accordance with law, or be made in writing and signed by him; which

written statement shall show that he has been warned by the person to whom the same is made; First, that he does not have to make any statement at all. Second, that any statement made may be used in evidence against him on his trial for the offense concerning which the confession is therein made; or, unless in connection with said confession, he makes statements of facts or circumstances that are found to be true, which conduce to establish his guilt, such as the finding of secreted or stolen property, or the instrument with which he states the offense was committed. If the defendant is unable to write his name, and signs the statement by making his mark, such statement shall not be admitted in evidence, unless it be witnessed by some person other than a peace officer, who shall sign the same as a witness." Said Chapter 118 became and is Article 727 of our present Code of Criminal Procedure. It will be noted that the outstanding element of the Amendment of 1907 was to require that the confession be in writing under certain circumstances. Since that time, an oral confession is not admissible "unless in connection with said confession, he makes statements of facts or circumstances that are found to be true, which conduce to establish his guilt, * * * ", or unless such oral confession is a part of the res gestae. *Holmes v. State*, 100 Tex.Cr.R. 635, 273 S.W. 849; *Lightfoot v. State*, 117 Tex.Cr.R. 515, 35 S.W.2d 163; *Broussard v. State*, 134 Tex.Cr.R. 1, 114 S.W.2d 248; *Yarbrough v. State*, 136 Tex.Cr.R. 7, 123 S.W.2d 356; *Hext v. State*, 104 Tex.Cr.R. 46, 282 S.W. 242.

" 'The legislative history thus presented shows that the legislature of this state has gradually restricted the use or admission in evidence of confessions of one accused of crime made while in jail or in custody of an officer.' 168 S.W.2d 258, 259.

"Since such historical recitation in *Pierson*, it is observed that Article 726, C.C.P. 1925, was brought forward in the 1965 Code of Criminal Procedure, un-

changed, as Article 38.21, Vernon's Ann. C.C.P. 1965, and former Article 727 was revised, becoming Article 38.22, Vernon's Ann.C.C.P. 1965 (Acts 1965, 59th Leg., vol. 2, p. 317, ch. 722). Said article retained the restrictions of the earlier statutes and further provided that a written confession would not be admissible unless it showed that the accused had been warned by a magistrate and also by the person taking the confession. The statute was again amended in 1967 (Acts 1957, 60th Leg., p. 1740, ch. 659, § 23) superimposing the *Miranda* warnings and requirement of waiver upon the statutory scheme as to written confessions. Such revision eliminated the necessity of the double warning with regard to a written confession, and authorized voluntary oral confessions made while in jail or custody under the following three circumstances:

"(1) where it be shown to be the voluntary statement of the accused taken in an examining court (§ 1(a));

"(2) where the accused makes an oral statement of facts or circumstances that are found to be true, which conduce to establish his guilt, such as the finding of secreted or stolen property, or the instrument with which he states the offense was committed (§ 1(e)); or

"(3) where the oral statement was 'res gestae of the arrest or of the offense' (§ 1(f)).

"Thus, the legislature has made a statutory determination that proof of extrajudicial oral confessions made while in custody are generally unreliable. *This exclusion is not one of constitutional requirement. The wisdom of this legislative policy is not a matter for this court.*" (Emphasis added.) [footnote omitted]. *Butler*, supra, 191–193.

Despite the assertions of the majority to the contrary, the evolution of the law in this State may be summarized thusly: Silence of an accused was perceived to be an act which could be interpreted as being tantamount to a confession, and the statutes were clear that an uncautioned confes-

sion was not admissible. There is little caselaw from the era in which these rules developed which would indicate whether the rule was different when such "confession" was used for purposes of impeachment rather than as substantive evidence of the guilt of an accused. But it is clear that the law relative to "confessions" has always been based on statute in Texas.

*Butler*, supra, determined whether the Court would follow the United States Supreme Court decision of *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), which would allow an otherwise inadmissible confession to be used for purposes of impeachment. Presiding Judge Onion continued:

"In the instant case, the statement made by the appellant while in jail three and half hours after his arrest and the alleged offense which was used for impeachment was not reduced to writing. It was oral and made without any showing of excitement. It did not lead to the fruits of the crime, etc. Thus, there is an absence of facts to show that the statement came within the exceptions of the statute authorizing oral statements.

"For over seventy-five years, the law in Texas has been that a confession, inadmissible in the State's case in chief, is not admissible for the purpose of impeaching an accused as a witness in his own behalf. 1 Branch's Ann.P.C., 2d ed., § 96, p. 107. If not admissible as original evidence as a result of the statute, then it is not available for impeachment purposes even if the defendant has taken the witness stand. And, this is true even though the defendant, in taking the stand as a witness, is normally subject to the same rules as another other witness.

" '... He may be contradicted, impeached, discredited, attacked, sustained, bolstered up, made to give evidence against himself, cross-examined as to new matter, and treated in every respect as any other witness testifying in behalf of defendant, *except where some statute forbids certain matters to be used against him, such as proof of his conviction on a former trial* *of the present case, his failure to testify on a former trial or hearing, and the like ....*' (Emphasis added.) 1 Branch's Ann. P.C., 2d ed., § 168, p. 170.

"Some difficulty has arisen since over the years the various statutes relating to confessions have been construed as not strictly confined to a technical confession but to cover any act or conduct in the nature of a confession, statement, or circumstance done or made by the defendant while in confinement or custody. Unless there has been a showing that the statute has been complied with, the State may not use such evidence as a criminative fact against the defendant. See generally 1 Branch's Ann.P.C., 2d ed, § 82, p. 79 and cases there cited.

"The rule is explained in 62 Tex.Jur.2d Witnesses § 345, p. 390, as follows:

" 'An incriminating statement by the defendant, which may be introduced in evidence as a confession for want of compliance with the pertinent statute, may not be used either on his cross-examination in order to elicit an admission or denial that he made, relative to the occurrence, a prior statement inconsistent with his present testimony, or to contradict his denial. In other words, the mere fact that the statement is sought to be used to discredit the defendant by showing that on another occasion he gave a version of the facts in conflict with his testimony does not render the testimony admissible under the statute. Accordingly, in order to determine the use or admissibility of the statement for impeaching purposes the same test is applied as where it is sought to introduce the statement as a confession of guilt.

" 'On the other hand, a statement made by the defendant-witness at a former trial is not one that is governed by the statute, whether or not the contradictory statement was self-incriminating, and it may be used for impeaching purposes. Again, the statute does not apply to a prior statement by the defendant the tendency of which, if believed, would be to exculpate him, so that that statement may be used to impeach him if he testifies in conflict therewith.'

"Since the decision in *Morales v. State*, 36 Tex.Cr.R. 234, 36 S.W. 435 (1896), this court has consistently held that the confession of an accused which is inadmissible as original evidence for failure to comply with the applicable statute cannot be used for his impeachment. In *Morales*, the unwarned statement used for impeachment of the defendant was a complete acknowledgment of the crime charged.

"*Bailey v. State*, 40 Tex.Cr.R. 150, 49 S.W. 102 (1899), noted that *Morales* laid down the doctrine that it was incompetent to lay a predicate for confessions of guilt made by a defendant in jail not taken in accordance with the statute in order to contradict him by another witness. While in the *Morales* case the predicate was a direct confession on the part of the defendant on his guilt of the crime charged, the court, in *Bailey*, stated:

" '... While a rigid construction of the statute might confine the testimony strictly to technical confessions of guilt, yet we believe the terms of said statute have a broader signification, and that it was intended to protect a defendant while in jail, and to prevent the state going into the jail, and proving inculpatory or criminative facts against defendant by declarations or statements, he not having been warned, as the statute requires....' 49 S.W. at 103.

"Bailey had testified and made out a case of 'accident' and was contradicted and impeached by an unwarned verbal statement made while under arrest.

"In *Hernan v. State*, 42 Tex.Cr.R. 464, 60 S.W. 766 (1901), a burglary case, the defendant testified to alibi (that he was in another part of Dallas at the time of the offense). On cross examination, over objection, he denied he had stated to the officer who arrested him that he could not be guilty of the offense as he had been in Hot Springs, Arkansas, on the date in question. Over objection, he was impeached by the arresting officer's testimony.

"The court said:

" '... It is insisted by appellant that though this testimony was, strictly speaking, not a confession, yet it was used against him as an inculpatory fact, in view of the defense of alibi set up by him, and was therefore, if not within the letter, within the spirit, of our statute, which inhibits the admission of the confessions of appellant while under arrest, unless he had been duly warned....'

"In reversing, the court agreed and cited *Bailey* with approval.

"In *Johnson v. State*, 43 Tex.Cr.R. 476, 66 S.W. 845 (1902), the defendant, on cross examination, answered 'No,' when asked if he did not deny his name while under arrest. He was subsequently impeached. The court wrote:

" '... We have held that this statute ... gives perfect and complete immunity to defendant, and such testimony is not admissible, without warning, either for the purpose of impeachment or as original testimony....'

"In *Whorton v. State*, 69 Tex.Cr.R. 1, 152 S.W. 1082 (1913), the majority, nothing the cases were in conflict, held that the confession statute had no application to 'wholly exculpatory' statements, 'even though the state should introduce other evidence showing such exculpatory statements are false.' The testimony here that defendant stated, while under arrest, that he was in Fort Worth was introduced as original evidence and is strikingly similar to the impeachment evidence in Hernan v. State, supra.

"*Mason v. State*, 74 Tex.Cr.R. 256, 168 S.W. 115 (1914), followed *Whorton* and overruled *Bailey*. Here again the impeachment of the defendant was not involved as he did not testify. Presiding Judge Davidson dissented in both *Whorton* and *Mason* pointing out that while the statements used were mainly exculpatory, they were utilized by the State as a basis for contradiction and thus would operate as incriminating evidence in the nature of a confession.

"In *Dover v. State*, 81 Tex.Cr.R. 545, 197 S.W. 192 (1917) the question of what constitutes a confession was involved although

the judgment was reversed on other grounds. In *Dover*, the judge who wrote the original opinion relied upon *Whorton* and *Mason* for the proposition that exculpatory statements were not prohibited from introduction by the confession statute, but the majority disagreed, stating:

" 'The purpose and effect of this statute (C.C.P., 810) is to prevent the prosecution from using against the accused the testimony of the officer having him under arrest to a verbal statement made by the accused which the state seeks to use to prove his guilt.'

"*Hernan*, among other cases, was cited with approval.

"To the same effect is *Lightfoot v. State*, 117 Tex.Cr.R. 515, 35 S.W.2d 163, 165 (1931), where the court said:

" 'The purpose and effect of article 727, C.C.P., is to prevent the prosecution from using against the accused, by the testimony of the officer placing him under arrest, a verbal statement made by the accused which the state seeks to use in proving his guilt. *Hext v. State*, 104 Tex.Cr.R. 46, 282 S.W. 242; *Donohoe v. State*, 115 Tex.Cr.R. 17, 27 S.W.2d 215....'

"See also *Williams v. State*, 88 Tex.Cr.R. 87, 225 S.W. 177 (1920).

"In *Holmes v. State*, 100 Tex.Cr.R. 635, 273 S.W. 849 (1925), in a situation very similar to the case at bar, a constable was permitted to testify as to a conversation he overheard between the defendant and one DeHart and his wife relating to having arranged bond and expecting the officers, and one Hall was permitted to testify as to a conversation between the defendant and his father in jail relative to pleading guilty. The defendant was under arrest on both occasions. The court reversed the murder conviction noting that the defendant had not been warned and that the statements had not been reduced to writing. In *Holmes*, the testimony was used as direct evidence and not for impeachment.

"In *Morman v. State*, 127 Tex.Cr.R. 264, 75 S.W.2d 886 (1934), the accused, over objection, on cross examination denied he

told the officers who arrested him in San Antonio that he was not in Houston when the car was stolen. The testimony of the officers impeached him. The court held that the effect of such testimony was to impeach the testimony given by the defendant, and that proof of a confession or of a statement of facts amounting to a confession, made while the accused is in custody would not be admissible to impeach him. *Lightfoot v. State*, supra, was cited with approval.

"In *Bussey v. State*, 147 Tex.Cr.R. 447, 181 S.W.2d 94 (1944), a murder prosecution, a written statement of the accused was introduced. Testifying in his own behalf, the defendant related such confession was correct as far as it went but did not contain all he said on that occasion, etc., and some explanations were omitted.

"The District Attorney then testified that subsequent to the confession the defendant was before a grand jury and that he acknowledged the written statement was correct and that he did not desire to add anything to it. The court reversed citing *Morales* and concluded that such evidence, not in accordance with the statute, could not be used for impeachment. Even though the evidence was later withdrawn and the jury instructed to disregard, this action was not sufficient to avoid the reversible error.

"In *Freeman v. State*, 172 Tex.Cr.R. 144, 354 S.W.2d 141 (1962), a driving while intoxicated prosecution, the officer testified the accused was intoxicated when arrested. The accused denied intoxication and on cross examination also denied he had told the arresting officer he had been with his girl friend all night drinking 'Ezra Brooks whiskey.'

"In rebuttal, the officer testified the accused told him that he (the accused) 'had two or three drinks of Ezra Brooks bourbon whiskey the night before he was arrested.'

"Here again the court held that what was not admissible as original evidence was inadmissible for the purpose of impeachment. Numerous authorities were cited.

"And, in *Garner v. State,* 464 S.W.2d 111 (Tex.Cr.App.1971), it is stated that

" '... in construing our confession statutes this Court has excluded any act tantamount to or in the nature of a confession and to any unwarned statement even though it lacks the essential elements of a confession....'

"In *Terry v. State,* 420 S.W.2d 945 (Tex. Cr.App.1967), the court again held that exculpatory statements were not within the ambit of the confession statute, but noted that *Miranda* had swept away any distinction between inculpatory statements and statements alleged to be merely 'exculpatory' but which were used for impeachment by the State to prove guilt by implication.

"With this background and putting aside any continuing conflict in the cases as to whether exculpatory statements are included within the confession statute, we return to the instant case.

"The oral statement used for impeachment was not an exculpatory one. It was not, on the other hand, one that was incriminating, standing alone. It was an acknowledgment of subordinate facts, colorless with reference to actual guilt. It was used, however, as a direct attack upon appellant's testimony and to show that such testimony was false. And, in this sense, it was oral inculpatory testimony not within any of the exceptions pertaining to oral confessions or statements and, being by decisional law within the ambit of the statute, it was neither admissible as original evidence or for impeachment.

"Does *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), compel a different result or serve as a basis for abandoning long-established precedent for the admission of oral statements made in custody absent interrogation or suggestion and without deception or deceit?

"In *Harris,* the Supreme Court held that a defendant who takes the stand may be impeached by a prior inconsistent confession even though the confession was inadmissible in the state's case in chief because of a failure to administer the warnings required by *Miranda v. Arizona,* supra, as long as the confession otherwise 'satisfie[d] legal standards as to trustworthiness.' *Harris v. New York,* 91 S.Ct. at 645. The Court reasoned that the purpose underlying exclusion of evidence tainted by *Miranda* error was to deter proscribed police conduct and that sufficient deterrence flowed from exclusion from the State's case in chief. This deterrence function, the Court concluded, should not be used to immunize or 'shield' a defendant-witness from the 'traditional truth-testing devises of the adversary process.' 91 S.Ct. at 645–646.

"Does the force of the *Harris* reasoning apply with equal vigor to the admission of oral confessions for impeachment which are otherwise inadmissible under Article 38.22, as is the State's contention? We believe not.

"Such argument, advanced by the State, does have a superficial plausibility because the Supreme Court's strong language that the rules of exclusion should not be a shield for perjury appear to apply to the use of prior inconsistent oral confessions. Beyond these surface similarities, however, there are important differences which serve to distinguish the question presented in *Harris* from the narrow issue in this case.

"*Harris* is bottomed on the premise that the mere failure to give *Miranda* warnings does not, of itself, in any way impair the reliability of the confession. There being no question as to reliability and since the deterrence function was sufficiently served by exclusion from the State's case in chief, there was no justification for further exclusion of the confession. But this logic has validity only where the supposed theory of exclusion is based solely on extrinsic policy factors, such as regulation of police conduct, an assumption the Court adopted with respect to *Miranda* error. Where there are other reasons for the exclusion, such as the general unreliability of the evidence, *Harris* cannot be read to authorize such evidence for impeachment purposes because admission would then violate the con-

dition the Supreme Court so carefully added—namely, that the evidence satisfies 'legal standards as to trustworthiness.'

"This should suggest why the reasoning of *Harris* does not support the heavy burden the State has assigned to it. Even if *Harris* is correct in holding that the mere absence of *Miranda* warnings and waiver does not affect the reliability of 'trustworthiness' of a confession, it does not follow that proof of oral confessions in Texas state criminal proceedings not taken in compliance with the confession statute can be considered equally as 'trustworthy.' Indeed, this court cannot so hold in face of the statutory policy to the contrary. As earlier noted, the Legislature in Article 38.-22, supra, has made the statutory determination that testimony surrounding oral confessions made while in custody or confinement is unreliable with certain statutory exceptions. As earlier noted, it has been said that this perceived evil arises because oral confessions are ' "... so liable to be misunderstood, so easily fabricated and so hard to be contradicted." ' *Pierson v. State*, supra, 168 S.W.2d at 259.

"This statutory exclusion is not a constitutional requirement, either state or federal, and the wisdom of this legislative policy is, of course, not a matter for this court. To permit testimony as to an oral confession (not within any statutory exception) for impeachment would undermine the legislative determination expressed in Article 38.22, supra. 'Harris, of course, in no way obligates these (state) courts to overturn prior decisions as a matter of state criminal procedure.' note, 49 Tex.L.Rev. 1119, 1125 (1971). The exclusion of oral confessions stands on a different footing than the *Miranda* error involved in *Harris*.

"Therefore, we cannot agree with the State's contention despite the natural temptation to rush to embrace the *Harris* rationale. The beauty is only skin deep.

"Although the *Harris* decision, sanctioning the use of otherwise inadmissible statements for impeachment purposes provided the trustworthiness of the evidence satisfies legal standards, would provide persua-

sion for changing Article 38.22, supra, until those changes are made that statute would control the use of prior statements for impeachment and it was error to permit the impeachment in this case. See *United States v. Jordan*, 20 U.S.C.M.A. 614, 44 C.M.R. 44 (Court of Military Appeals, 1971).

"We need not decide whether the court erred in permitting the State to use appellant's silence while under arrest against him or to pass upon appellant's other grounds of error.

"The judgment is reversed and cause remanded." [Footnotes omitted.]

Since the decision in *Butler*, supra, the Legislature has seen fit to amend Article 38.22. They legislatively overruled *Butler* by requiring that the statements be the product of "custodial interrogation." In the same 1977 amendment, the Legislature also inserted the following:

"Sec. 5. Nothing in this article precludes the admission of a statement made by the accused in open court at his trial, before a grand jury, or at an examining trial in compliance with Article 16.-03 and 16.04 of this code, or of a statement that is the res gestae of the arrest or of the offense, or of a statement that does not stem from custodial interrogation, or of a voluntary statement, whether or not the result of custodial interrogation, that has a bearing upon the credibility of the accused as a witness, or of any other statement that may be admissible under law."

Thus, if the majority insists that post-arrest silence is a "statement" then clearly the statutory amendment allows such silence to be used to test the credibility of a testifying defendant, where such silence has not been induced by the government by giving *Miranda* warnings. See *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); and *Jenkins v. Anderson*, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980).

If the majority recognizes that no longer is the statute law in Texas such as to

prohibit the use of appellant's post-arrest, pre-*Miranda* silence for impeachment, then its entire holding is based on Article I, Section 10 of the Texas Constitution. Such a conclusion ignores the history of the jurisprudence of this State, for as noted by Presiding Judge Onion in *Butler*, such is *not* required constitutionally.

Finally, when a defendant takes the stand, he should be held to have waived the Fifth Amendment protection against compelled self-incrimination as well as any protection afforded by Article I, Section 10. Justice McDermott of the Pennsylvania Supreme Court expressed what should be the rule in Texas:

"The Fifth Amendment is a protection against compulsion. When one is not compelled by force, fear or favor to speak, but does so voluntarily for his own reasons, at a time of his own choosing, there is no earthly reason why he should not be subject to the same searching inquiry as any other witness. The Supreme Court in *Fletcher v. Wier,* [*Weir*] 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982), enunciated that principle saying:

" 'In *Jenkins v. Anderson*, 447 U.S. 231, 239, 65 L.Ed.2d 86, 100 S.Ct. 2124 (1980), a case dealing with pre-arrest silence, we said:

" ' "Common law traditionally has allowed witnesses to be impeached by their previous failure to state a fact and circumstances in which that fact naturally would have been asserted. 3A J. Wigmore, Evidence, § 1042, p. 1046 (Chadbourne Rev.1970). Each jurisdiction may formulate its own rules of evidence to determine when prior silence is so inconsistent with present statements that impeachment by reference to such silence is probative." ' 455 U.S. at [606] 102 S.Ct. at 1311, 71 L.Ed.2d at 493–94.

"The common law, based on common experience, recognized, as does the Supreme Court, that silence has its risks. That facts and circumstances may indeed have natural, human inconsistency with silence. Moreover, and more important,

'silence' is not the subject of the constitutional provision. The Fifth Amendment is not an exhortation to silence or a celebration of its golden qualities. It protects it when exercised, but it does not enforce or encourage silence. Hence, despite its enigmatic twist that *Miranda* 'warnings' are an inducement to silence, the Supreme Court is at pains to say that the federal Constitution does not prohibit mention of the natural inconsistency that may exist between silence and the facts and circumstances of a case. *Jenkins,* 447 U.S. at 239, 100 S.Ct. at 2129; *Fletcher,* 455 U.S. at [606] 102 S.Ct. at 1311, 71 L.Ed.2d at 493–94.

"The Supreme Court therefore left the matter to the states in instances where no warnings or inducements to silence exist. Id. Given this opportunity, the majority in this case, continues its adventures in uncharted puddles. The majority explicitly acknowledges that the rule in Pennsylvania is more restrictive than the position taken by the Supreme Court. In doing so, I believe the Court has turned a cloak into a dagger.

"That one may remain silent in the face of accusation is a personal option, and a constitutional privilege. There is a difference, however, between silence and compulsion. Compulsion is never permissible. Silence is a choice, a choice, depending upon the facts and circumstances, that may contain risks.

"The majority confuses compulsion with 'silence'. There is a constitutional protection against compulsion, silence is a choice and a waivable privilege. So long as one maintains silence, we must, as far as possible, protect it from unfavorable inference. When one chooses to speak, however, we owe no duty to protect against any natural inconsistency that may exist between former elected, self-imposed silence and trial testimony.

"In this case, appellant, charged with murder, voluntarily took the witness stand to offer his version. No one forced or dragged him. He freely chose to speak. He offered that he fired in self-defense because someone was shoot-

ing at him. On cross-examination he was asked:

Did you ever tell the police that somebody was shooting at you?

"The majority finds this an impermissible reference to appellant's acknowledged 'silence' at arrest. It is clear, that at no time, at arrest or trial, was appellant induced, forced, promised or favored to speak. He did so because he wanted to, when he wanted to. To protect him from whatever inconsistency that elected silence may have created is to give selected sanctuaries immune from inquiry, from the truth testing process, and from the common experience of men. See *Commonwealth v. Alicea*, 498 Pa. 575, 582, 449 A.2d 1381, 1385 (1982)(McDermott, J., dissenting).

"The Supreme Court, not known for a heavy hand in these matters, has adopted the rule. In each one of these avant garde minority positions we espouse, we retire more of the small tools available to the truth testing process. Here, a shield has become a weapon. As Mr. Justice Stevens said in a similar situation:

" 'This is a case in which the defendants' silence at the time of their arrest was graphically inconsistent with their trial testimony that they were the unwitting victims of a "frame-up" in which the police did not participate. If defendants had been framed, their failure to mention that fact at the time of their arrest is almost inexplicable; for that reason, under accepted rules of evidence, *their silence is tantamount to a prior inconsistent statement and admissible for purposes of impeachment. Doyle v. Ohio*, 426 U.S. 610, 621–22, 96 S.Ct. 2240, 2246, 49 L.Ed.2d 91 (1976) (Stevens, J., dissenting) (emphasis supplied) (footnote omitted).

"Silence to save oneself or one's friends is not always invoked to thwart oppressors; it can be a greedy, self-centered thing of terrible consequence. The Constitution should not be distorted into a manual for escape artists to ward off every possible threat." *Commonwealth*

*v. Turner*, 499 Pa. 579, 454 A.2d 537 (Pa.1982) (McDermott, J., dissenting).

For all the reasons set forth herein, I vigorously dissent to the majority's expansion of the theory of "Independent State's Grounds" in Texas.

W.C. DAVIS, CAMPBELL and WHITE, JJ., join in this dissent.