IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN



 




NO. 3-91-433-CR





JOHN CONLEY,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE


 




FROM THE COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY 



NO. 345-941, HONORABLE STEVE RUSSELL, JUDGE PRESIDING



 





PER CURIAM



 A jury convicted John Conley of the offense of driving while intoxicated. Tex.
Rev. Civ. Stat. Ann. art. 6701l-1 (Supp. 1992). The court sentenced him to 180 days'
confinement in the Travis County Jail and a $500.00 fine. Appellant brings one point of error,
contending that the court erred in allowing the State to use his post-arrest silence to impeach him. 
We will affirm the judgment of conviction and sentence.



Background


 Approximately 1:20 a.m., Sunday, October 28, 1990, a taxicab driver hailed Austin
police officer Abbie Martinez while she was patrolling on the IH-35 frontage road and reported
reckless driving by a car several cars behind her. Martinez saw a car cut into her lane, then
quickly change lanes and enter IH-35. Martinez observed erratic driving for several blocks: the
car weaved from the outside lane to the inside lane and then toward the shoulder and alternated
between abrupt acceleration and braking. As Martinez was about to activate her car's overhead
flashing lights, the car suddenly pulled over onto the median and stopped. As she pulled up
behind appellant, she turned on those lights. 

 Appellant exited his car, stumbling and holding on to the door. When he first got
out of the car, he asked the officer, "Yes?" Martinez observed that appellant's speech was
slurred, and he had a strong odor of alcoholic beverage on his breath. When Martinez told him
that his driving was erratic, appellant offered the explanation that the vehicle's steering wheel was
very sensitive and that a small touch on it would cause the car to swerve a good deal. Martinez
then gave appellant field sobriety tests, which he failed. His later breath test showed a blood
alcohol concentration that exceeded .10. Appellant also had been consuming prescription pain
pills that day.

 On direct examination, appellant said that he told Martinez he pulled over and
stopped because the car had sensitive steering, it was "kind of messed up," it was hard to keep
the car between the stripes, and that he pulled over to let the passenger drive. When defense
counsel asked him why he intended to let the passenger drive, he said the passenger was thinking
about buying the car. On cross-examination, he repeated that he told the officer he was going to
let the passenger drive, but admitted that he could not remember whether in fact he told Officer
Martinez why he was letting his passenger drive. According to Martinez's testimony, after she
had prepared to transport appellant to the station, appellant's passenger told her they had pulled
over to switch drivers.

 In his argument to the jury, appellant's counsel argued, in part, as follows:



You may hear some suggestions in her [the prosecutor's] speech along the lines of,
well, why didn't he go ahead and tell that police officer that he had just pulled over
to change drivers because [the passenger] was thinking about buying the car? Why
didn't he go ahead and tell the police officer that?



In the State's closing argument, the prosecuting attorney said:



These are the kinds of things you jump out of the car and you volunteer. "Hey. 
Whoa. God." You know, "The reason I pulled you over is because you were
driving very erratically," and he says, "All right. The steering --"


[Objection that remark violates right to remain silent after arrest--overruled]


When she gets him out of the car, and he says -- and she comments about the way
he is driving, and about the abrupt manner in which he pulled over, he says to her,
"Well, the reason I pulled over is so my friend could drive." The clear implication
of that statement is, "I am too messed up to drive. I am just fixing to let my buddy
drive. So let me go. You know, he can drive. He is not drunk." That is the
clear implication.


Now, he comes into court and wants you to believe that what he meant by that
truncated statement was, "I was pulling over to let my friend drive because he is
going to buy the car." He left out that very important part when they were out
there on the side of the road. I submit to you that is not why he was pulling over
to let his friend drive because he was going to buy the car. Sure. I think he was
pulling over to let his friend drive because his friend knew that he wasn't in any
shape to drive the vehicle. They just did it a little bit too late.



Appellant contends that this closing argument was an improper use of post-arrest silence to
impeach appellant.



Analysis


 Post-arrest, pre-Miranda silence may not be used against a defendant with regard
to exculpatory matters to which he or she testifies at trial. Sanchez v. State, 707 S.W.2d 575, 578
(Tex. Crim. App. 1988); Thomas v. State, 812 S.W.2d 346, 350 (Tex. App. 1991, pet. ref'd). 
Cross-examination questions or comments during jury argument that link the implausibility of the
defendant's exculpatory story to his or her inconsistent act of remaining silent after arrest violate
Article I, § 10 of the Texas constitution and are not probative as prior inconsistent conduct. 
Sanchez, 707 S.W.2d at 580-582. 

 There are numerous problems in applying this general rule to appellant's situation. 
We will assume that appellant was under arrest, and that the post-arrest, pre-Miranda cases apply. 
The first flaw in appellant's argument that his silence was used to impeach him is that he was not
silent. When the officer told him his driving was erratic, he volunteered the explanation that his
steering wheel was very sensitive and therefore, it was difficult to keep the car straight in the
lanes. The reason for pulling over was given as changing drivers. This differed from the
explanation at trial that he stopped to change drivers because the passenger wanted to test-drive
the car. The prosecution's argument is not a comment on appellant's passive silence, but rather
an interpretation of what appellant affirmatively volunteered.

 Another flaw in appellant's position is that the State's argument was an answer to
appellant's argument. One category of proper jury argument is an answer to argument by
opposing counsel. Harris v. State, 784 S.W.2d 5, 12 (Tex. Crim. App.), cert. denied, 110 S.Ct.
1837 (1990). In closing argument, appellant's counsel told the jury that the prosecutor might say
something about appellant not offering an explanation of why he had pulled over.

 Finally, even if the remark were error, it was harmless. Tex. R. App. Proc. Ann.
81(b)(2) (Pamph. 1991). The State produced overwhelming evidence of appellant's guilt. The
officer's observations of appellant's behavior and the officer's opinion that appellant was
intoxicated would have been sufficient to sustain a conviction. Annis v. State, 578 S.W.2d 406,
407 (Tex. Crim. App. 1979). In addition, appellant's blood alcohol concentration was enough
to meet the legal definition of intoxication. Tex. Rev. Civ. Stat. Ann. art. 6701l-1(a)(2)(B) (Supp.
1992). We are satisfied that the overwhelming evidence of guilt dissipated whatever effect the
prosecutor's remark had on the jury. Harris v. State, 790 S.W.2d 568, 587 (Tex. Crim. App.
1989).

 We affirm the judgment of conviction. 


[Before Justices Powers, Jones and Kidd]

Affirmed

Filed: February 19, 1992

[Do Not Publish]