11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Carmella Rezals Sanders

Appellant

Vs.                   No.
11-00-00321-CR  -- Appeal from Dallas
County

State of Texas

Appellee

 

The jury
convicted Carmella Rezals Sanders of assault, a Class A misdemeanor offense,[1]
and the trial court assessed her punishment[2]
as confinement in the county jail for 180 days and a fine of $200.  The period of confinement was suspended, and
appellant was placed on community supervision for 12 months.[3]  We affirm.

                                                                  Issue
Presented

Appellant
presents only one issue for appellate review under TEX.R.APP.P. 38.1(e).  That issue reads in full as shown:

Appellant
was denied the effective assistance of counsel in violation of the Sixth and
Fourteenth Amendments to the Constitution of the United States because her
trial attorney failed to object to evidence that she exercised her right to
remain silent at the time of her arrest.

 

This issue will be
overruled.  The testimony about which
appellant refers was during the investigation prior to her arrest.

                                                                Background
Facts








Appellant
and the complainant (Michael Muhammad) have never been married, but they are
the parents of a small child.  On the
day of the offense, March 29, 2000, they met at a neutral site.  The complainant testified that appellant was
going to let him take their baby for a visit; however,  appellant testified that the complainant was
only supposed to visit with the child at the neutral site.  The assault occurred when the complainant
and his mother attempted to leave with the child.

After the
complainant and his mother testified to their version of the incident, the
State called Officer Dallas Dodson of the Duncanville Police Department.  Officer Dodson testified that he was
dispatched to the scene of the dispute at about 7:10 p.m.  Officer Dodson testified that, when he
arrived at the scene, he found appellant and the complainant walking on the
sidewalk.  They were still arguing, and
he tried to separate them.  The second
officer had not yet reached the scene, and Officer Dodson said he Afirst dealt with the female@ because Ashe seemed to be the one who was the most erratic.@ 
Officer Dodson said the male was Apretty calm@ and
that he did not see anyone else at that time.[4]  Relevant portions of Officer Dodson=s testimony on direct examination read as
shown:

Q: When
you say she was erratic can you describe what you mean by that?

 

A: She - -
the only thing she told me was I want my baby. 
It=s my baby - - I want my baby.  That was it. 
I mean - -

 

Q: Well,
what made you say she was erratic though?

 

A: Just
her demeanor.  You can tell the way she
was trying to talk with her hands.  And,
she was very upset.  She seemed very
emotional.

 

Q: After
speaking with her what did you do next?

 

A: About
that time the other officer did arrive on the scene - - Officer Luna.  And, he spoke with Mr. Muhammad.  I stayed with the female and just kept them
separated until Officer Luna could decipher what Mr. Muhammad had to tell him.

 

Q: After
Officer Luna spoke with Mr. Muhammad, what happened next?

 

A: We both
- - got together kind of in the middle [of the median on the street] to try and
figure out what his subject had to say and what mine said.

 

Q: And,
did you make a determination based on your discussion with Officer Luna?

 








A: Yes ma=am, we did. 
We determined that apparently during the course of the transfer of the
kid or whatever was going on at that point - - Ms. Sanders had apparently hit
him in the back of the head with a closed fist.  And, had somehow reached around and hit him in the lip area
causing his lip to bleed....[T]he only noticeable bodily injury we saw was on
the lip area.

 

                                                           *    *   
*

 

Q: What happened next
after you conferred with Officer Luna?

 

A: I simply told him what
Ms. Sanders had told me - - which was basically nothing.  I got her I.D.=d but that was about it.  I told
him that Ms. Sanders wasn=t answering any of my questions. 
And, that - - I conferred with him basically again what Mr. Muhammad had
told him and decided she would be placed under arrest for Class A Family
Violence, bodily injury.

 

Officer Dodson testified that Officer Luna transported appellant to the
Duncanville City Jail.  Officer Dodson
then took a statement from the complainant=s mother which supported the complainant=s version of the dispute.

The State rested after Officer Dodson testified.  Appellant then took the witness stand, and
she testified that the complainant is the father of her child and that they met
on March 29, 2000, to let him visit with the baby in her car.  Appellant testified that, when the
complainant took the baby out of her car, she asked him what he was doing.  He said that he was taking the baby, and
appellant said:  A[N]o you=re not.@ 
Appellant testified that the complainant=s mother held her and that he put the baby in his mother=s car. 
Appellant managed to get loose, and she ran to the front of the car to
keep him from driving off with the baby. 
Appellant said that she jumped onto the hood of the car to keep him from
driving off with the baby.  The only
testimony from appellant about the police officer reads in full as shown:

Q: What did you tell the
officer?

 

A: I told the officer
that I wanted my baby and that I told him that Mr. Muhammad was coming up there
and he wanted to see the baby.  I was
letting him see the baby.  But at the
same time he started trying to take the baby out of the car seat.  And, while I was trying to get the baby from
him -- he started attacking me.  

 

                                                           *    *   
*

 








Q: Now, when the officer
came were you injured?

 

A: Yes, I was.

 

Q: Tell the jury what
your injuries were?

 

A: When the officer drove
up and he was trying to calm me down - - he put - - he took out his flashlight
and he shined it on my face.  And, he
said, are you okay?  I said, I=m fine. 
He said, are you sure - - do you need to go to the hospital?  I said, no - - He said, are you sure because
you are bleeding all over your face.  I
said...I just want my baby back.  And,
he said, are you sure because he saw bruises and scratches on me.  I said, I just want my baby back --  I said, I don=t care --  I just want my baby
back.  I said, I don=t want to go to the hospital.  I just want my baby back.

 

On cross-examination, appellant testified that she told the police
officer that the complainant hit her and that the officer was Alying when he said@ that she Awouldn=t say anything to him about what happened.@ 
Appellant also testified that she realized that she had scratches on her
face and knees when the officer pointed them out to her, that the police
officer asked her for her name and where she lived, that she told him, and that
he then asked her what happened. 
Appellant testified that she Agave him the accounts of what happened@ and told him: AI just want my baby back.@  

Officer Dodson was then called as a rebuttal witness.  He testified that he did not remember
appellant having any injuries at the scene of his investigation and that he did
not remember her complaining of any injuries. 
He also testified that if there had been any injuries, he would have
made a note of them in his report. 
Officer Dodson also testified that appellant was not cooperative.

                                                 Controlling
Authorities

Appellant cites Strickland v. Washington, 466 U.S. 668 (1984), and
Hernandez v. State, 988 S.W.2d 770 (Tex.Cr.App.1999), as the basis for her
claim that she did not receive Aeffective assistance of counsel.@  Appellant cites Doyle v. Ohio,
426 U.S. 610 (1976), and Sanchez v. State, 707 S.W.2d 575 (Tex.Cr.App.1986), in
support of her claim that trial counsel should have objected to evidence of her
Apost-arrest silence.@  Both
Doyle and Sanchez concern a person=s right to be free from compelled self-incrimination which Aarises at the moment an arrest is
effectuated.@  








The Asilence@ about which appellant complains occurred during the course of the
pre-arrest investigation of the dispute. 
Neither Doyle nor Sanchez were applicable; consequently,
appellant=s trial counsel did not err in failing to
make objections based upon those cases. 
The record shows that appellant received an effective defense in the
trial court.  Her trial counsel filed
appropriate motions prior to trial, made an opening statement to the jury which
summarized her position, cross-examined the State=s witnesses, made appropriate objections to the State=s questions, assisted appellant in giving
testimony as to her version of the dispute, and then made a jury argument which
summarized the testimony supporting her version of the dispute.  The issue presented for appellate review is
overruled.

The
judgment of the trial court is affirmed.

 

BOB
DICKENSON

SENIOR
JUSTICE

 

October 25, 2001

Do not publish.  See TEX.R.APP.P. 47.3(b).

Panel consists of:  Wright, J., and

McCall, J., and Dickenson, S.J.[5]











[1]TEX. PENAL CODE ANN. '
22.01(a)(1) (Vernon Supp. 2001) defines the offense (Aintentionally, knowingly, or recklessly causes bodily
injury to another@) and declares that it is a Class A misdemeanor
offense.





[2]TEX. PENAL CODE ANN. '
12.21 (Vernon 1994) provides that a person adjudged guilty of a Class A
misdemeanor shall be punished by a fine of not more than $4,000, by confinement
for not more than one year, or by both a fine and confinement.





[3]The fine was not probated.  





[4]Later, the complainant=s
mother came back to the scene in her car with the baby.





[5]Bob Dickenson, Retired Justice, Court of Appeals, 11th
District of Texas at Eastland sitting by assignment.