COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

§

MARIO FONSECA,                                             No. 08-10-00080-CR

§

         Appellant,                                    Appeal from

§

v.                                                   384th District Court

§

THE STATE OF TEXAS,                           of El Paso County, Texas

§

         Appellee.                                (TC # 20090D01580)

§

## **O P I N I O N**

Mario Fonseca was charged by indictment with entering the habitation of Gabriel Valdivia, without his consent, and committing and attempting to commit aggravated assault with a deadly weapon.[1] A jury convicted Appellant of the lesser included offense of burglary of a habitation and sentenced him to confinement in the Institutional Division of the Texas Department of Criminal

---

[1] The indictment charged Appellant with two counts of burglary of a habitation. Count I alleged that on or about February 19, 2009, Appellant:

> [D]id then and there intentionally and knowingly, without the effective consent of **GABRIEL VALDIVIA**, the owner, enter a habitation and did then and there commit and attempt to commit **a felony, to wit: Aggravated Assault with a deadly weapon**.

Count II alleged in two paragraphs that on or about February 19, 2009, Appellant:

> **PARAGRAPH A**
> did then and there intentionally and knowingly, without the effective consent of **GABRIEL VALDIVIA**, the owner, enter a habitation with intent to commit assault,
>
> **PARAGRAPH B**
> did then and there intentionally and knowingly, without the effective consent of **GABRIEL VALDIVIA**, the owner, enter a habitation and did then and there commit and attempt to commit **assault.**

At trial, before opening arguments, the parties informed the court they intended to drop Count II and proceed only on Count I. The court informed the parties that, "[i]t's a lesser-included, it still may be included in the charge." The parties accepted the court's statement and agreed to proceed only on Count I.

Justice for a period of ten years and assessed a $10,000 fine. The jury recommended his imprisonment be suspended, and the trial court entered judgment in accordance with the jury's verdict placing Fonseca on community supervision for a period of ten years and ordering him to pay a $10,000 fine. Appellant appeals his conviction arguing that the State improperly referenced his post-arrest silence during trial denying him his right to a fair trial by an impartial jury, and that he was denied effective assistance of counsel. For the following reasons, we will affirm.

## FACTUAL BACKGROUND

On February 19, 2009, at approximately 1 a.m., Gabriel Valdivia Rodriguez heard knocking on the front door of his mobile home. He got up, turned on lights, and answered the door. When he opened the door, three men confronted Valdivia and told him his son owed them money. Valdivia does not have a son. However, Valdivia moved into the trailer approximately three weeks before the attack, and lived there with his girlfriend, Erika Ramirez, and her young daughter and teenage son.

The men hit Valdivia with a tire iron and entered the trailer. Valdivia was able to run into his bedroom and call 911. The three men followed him into the bedroom where they threw him onto the bed and beat him using a power drill and their hands. At the sound of an approaching ambulance, two of the three men fled. One of the men, later identified as Appellant, stayed behind and took the contents of Valdivia's pockets. When Appellant left he displayed his middle finger to Valdivia and said, "F--- you." Ramirez and her two children were at home during the attack.

The police arrived a few minutes after Appellant left Valdivia's trailer. Officer Victor Vela and his partner were the first to arrive on the scene.[2] After speaking with Ramirez and her children, Officer Vela entered the trailer and located Valdivia in the back bedroom. Officer Vela described

---

[2] The initial dispatch to the officers referenced a stabbing.

the scene:

> He was sitting on the bed. The bed sheet were full of blood. He had a laceration to his face. He had blood streaming from his back, and he was -- he seemed disoriented. He couldn't really talk to us because he was kind of disoriented.

Officer Vela spent the next ten to twelve minutes interviewing Valdivia.

During his discussions with the witnesses and the victim, Vela obtained a description of the attackers' car radioed it to other units. The suspect vehicle was described as a dark truck, possibly a Ford. The description also included a possible license plate number.

The Palms complex where Valdivia's trailer is located is designed such that there is one entrance and one exit. The exit gate is locked at night, leaving the entrance as the only way in or out of the complex. Officer Vela asked that units stand by the exits while other units searched the area within.

Shortly after the radio transmission concerning the vehicle, Officers Balderrama and Foster located a Ford F-150 pickup matching the description. The truck was within the complex, only a few blocks from Valdivia's trailer. Although the license plate number on the truck did not identically match the number on the description, it was substantially similar. Officer Balderrama testified it was a cold night, but when he felt the hood of the truck he discovered the engine was still warm. The officers then shined their flashlights into the truck and saw a man, later identified as Appellant, lying on the floorboard.[3] According to Officer Balderrama, Appellant appeared to be hiding. The officers asked Appellant to exit the vehicle, and he complied. The officers handcuffed Appellant and placed him in the back of a patrol unit for their own safety. Officer Balderrama testified that Appellant was

---

[3] At trial, Officer Vela testified to similar events. He was outside briefing his sergeant when a call went out referencing a suspicious vehicle four to six blocks away on Fiji Palm. Vela and his sergeant drove to Fiji Palm where they met up with Officers Balderrama and Foster. Officer Vela observed the two on-scene officers approach the vehicle with their guns out. He then saw them move back "like they were startled," and Vela saw that there was a subject inside the truck. The suspect was identified as Mario Fonseca, Appellant.

very quiet, and although suspects usually ask why they are being detained, Appellant did not ask many questions. Appellant had no noticeable scrapes on his knuckles or blood on his clothes, but he was "out of breath" or "panting" and "kind of sweating." Once Appellant got out of the vehicle, the officers found two tire irons on the floorboard.[4] No blood was found on or inside the car.

Officer Chavez then arrived at the vehicle scene. Officer Vela informed Chavez they had detained a subject and instructed him to bring the three witnesses and the victim to the vehicle scene to identify Appellant. Each witness was given instructions and brought from the trailer individually. Ramirez's daughter was the first witness transported for a one-on-one show-up identification, followed by her teenage son, and then by Ramirez herself. All three identified Appellant as one of the attackers.[5]

Finally, Officer Chavez transported Valdivia to the vehicle location. Valdivia testified that approximately twenty minutes elapsed between the time police arrived and the time he was taken to Appellant. When Valdivia saw Appellant, he recognized the person "perfectly."

During the identifications, Appellant stood handcuffed between two police officers while a spotlight shone on him. After the witnesses and the victim positively identified Appellant as one of the attackers, Officers Balderrama and Foster advised Appellant he was a suspect, placed him under arrest, and transported him to the police station.

At trial, Appellant testified on his own behalf. On the night in question, he attended a social event where he drank too much. According to Appellant, he decided to sleep in the vehicle rather than drive because he had been drinking. He was awakened by police knocking on his window. The

---

[4] At trial the state offered a photograph of the passenger's side floorboard. The photo clearly shows two crowbars, or tire irons, on the floorboard near the passenger's seat. The photo was admitted without objection.

[5] At the time of trial, Ramirez and Valdivia were no longer a couple. Neither Ramirez nor her children testified.

officers handcuffed him, but they did not tell him he was under arrest and he was not given *Miranda* warnings.  He also testified that he told the officers the same story that he told the jury.

On appeal, Appellant repeatedly classifies his complaint as a single issue:

SOLE ISSUE: WHETHER APPELLANT WAS DEPRIVED OF HIS RIGHT TO A FAIR TRIAL BECAUSE THE STATE EMPLOYED EVIDENCE AND ARGUMENT OF POST-ARREST SILENCE WHICH IS PROHIBITED UNDER CONSTITUTIONAL LAW.

Although Appellant's complaints are all based on the same two specific excerpts from the trial, we have framed the issues thusly:  In Issue One, Appellant complains that the State elicited comments during its cross-examination of Appellant which constituted improper questioning and improper impeachment in violation of Appellant's constitutional rights.  In Issue Two, he complains that the State improperly referenced his post-arrest silence during closing argument, in violation of his constitutional right to a fair trial by and improper jury.  Finally, Appellant contends he received ineffective assistance of counsel because his trial attorney failed to object to the post-arrest comments complained of in Issue One.

## COMMENTS ON POST-ARREST SILENCE

In Issues One and Two, Appellant maintains he received an unfair trial because the State elicited evidence of his post-arrest silence and used that evidence to convict him in violation of the United States and Texas Constitutions.  These arguments are based on references made during the State's cross-examination of Appellant and the State's closing argument.  The State replies that (1) the issue is waived because counsel failed to object; and (2) any reference to post-arrest silence was not improper because Appellant opted to testify and opened the door to the evidence.  We agree with the State.

### *Standard of Review and Applicable Law*

The federal constitution's guarantee of due process prohibits comment on an accused's

post-arrest silence after *Miranda* warnings are given.[6] *Doyle v. Ohio*, 426 U.S. 610, 617-18, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); *Fletcher v. Weir*, 455 U.S. 603, 607, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982). The prohibition against the use of defendant's post-arrest silence contained in the United States Constitution is based on the unfairness of assuring a suspect he has the right to remain silent and then using that silence against him. *Brecht v. Abrahamson*, 507 U.S. 619, 628, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). Until *Miranda* warnings have been given, the use of a defendant's silence is not prohibited by the federal constitution. *Fletcher*, 455 U.S. at 606-07.

"Uses" of the silence that are prohibited include impeachment of the defendant's testimony, impeachment of defensive theory, assertion as affirmative proof of guilt, or other similar uses to obtain a defendant's conviction. *See Wainwright v. Greenfield*, 474 U.S. 284, 292, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986). However, if a defendant testifies at trial and his trial testimony is inconsistent with his post-arrest statements, *i.e.*, as contrasted from his silence, he can be impeached on such statements. *Anderson v. Charles*, 447 U.S. 404, 409, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980). In the instance where a comment on post-*Miranda* warning silence violates due process, it is not the type of error which requires automatic reversal. *Brecht,* 507 U.S. at 629. Rather, the error is subject to a harm analysis. *Id.*

The Texas Constitution provides additional protection and prohibits comment on a person's post-arrest silence both before and after *Miranda* warnings are given. *Sanchez v. State*, 707 S.W.2d 575, 579-80 (Tex.Crim.App. 1986). Use of a defendant's post-arrest silence violates the prohibition against self-incrimination even if *Miranda* warnings have not been given. *See* TEX.CONST. art. I, § 10; TEX.CODE CRIM.PROC.ANN. art. 38.08 (West 2010)(the failure of any defendant to testify in his own behalf shall not be taken as a circumstance against him or be alluded to or commented upon

---

[6] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct 1602, 16 L.Ed.2d 694 (1966).

by counsel); *see also Franklin v. State*, 693 S.W.2d 420, 428 (Tex.Crim.App. 1985)(stating that Article 38.22 of the Code of Criminal Procedure has consistently been construed as prohibiting proof of an accused's silence while under arrest and which tends to communicate thoughts of the defendant of an incriminating nature); *see, e.g., Dinkins v. State*, 894 S.W.2d 330, 356 (Tex.Crim.App. 1995), *cert. denied*, 516 U.S. 832, 116 S.Ct. 106, 133 L.Ed.2d 59 (1995); *Sanchez*, 707 S.W.2d at 580.

As under federal law, an accused can be questioned on his pre-arrest silence as well as any post-arrest statements. *Turner v. State*, 719 S.W.2d 190, 193 (Tex.Crim.App. 1986). However, before a defendant can be questioned on an inconsistent post-arrest statement, a predicate must be laid to establish the making of the statement and the inconsistency therewith. *Id.*

Error from a comment on post-arrest silence can be waived by failing to properly object and is generally cured by an instruction to the jury to disregard. *Franklin*, 693 S.W.2d at 428; *see also Wheatfall v. State,* 882 S.W.2d 829, 836 (Tex.Crim.App. 1994), *cert. denied*, 513 U.S. 1086, 115 S.Ct. 742, 130 L.Ed.2d 644 (1995)(overruling point of error because appellant failed to object to testimony on his post-arrest silence). Therefore, to preserve these constitutional grounds for review, an appellant must make a proper objection and obtain a ruling on that objection. TEX.R.APP. P. 33.1; *Smith v. State*, 721 S.W.2d 844, 855 (Tex.Crim.App. 1986). A proper objection is timely and specific, stating the grounds for the ruling sought with sufficient specificity unless the grounds are apparent from the context, and pursued to an adverse ruling. TEX.R.APP.P. 33.1. A timely objection is made at the first opportunity or as soon as the basis for the objection becomes apparent. *Lagrone v. State*, 942 S.W.2d 602, 618 (Tex.Crim.App. 1997); *Jones v. State*, 111 S.W.3d 600, 604 (Tex.App.--Dallas 2003, pet. ref'd). Even constitutional error is waived if the defendant fails to timely object. *See Broxton v. State*, 909 S.W.2d 912, 918 (Tex.Crim.App. 1995); *Smith*, 721 S.W.2d at 855.

### *Improper Questioning and Improper Impeachment*

In Issue One, Appellant contends that the testimony the State elicited during its cross-examination violated his right as an accused to be free from compelled self-incrimination under both the United States and Texas Constitutions. Appellant also argues that "rules relating to impeachment prohibit the use of such evidence since post-arrest silence is not probative as prior inconsistent conduct." Therefore, it appears Appellant alleges both improper questioning and improper impeachment occurred.

At trial, Appellant chose to testify on his own behalf. He told the jury the following rendition of what occurred that night. He was driving his employer's truck and after work he attended a party. Following a disagreement with a friend, he left the party, already feeling drunk. He then went to a nearby convenience store and purchased more beer. After consuming his two "tall boys," he became concerned about getting a DWI and decided to pull his truck over and sleep it off. Worried he might be rear-ended if he pulled over on the street, Appellant drove into the Palms complex where he parked his truck and went to sleep. Appellant was asleep when the police knocked on his window. During direct examination, the following colloquy occurred:

> Q. When the officers knocked on the window did they tell you why they were arresting you?
>
> A. No, sir, they didn't.
>
> Q. Did the indicate they were going to arrest you?
>
> A. No, sir, they didn't.
>
> Q. But they handcuffed you?
>
> A. Yes, they did.
>
> Q. Did they let you ask any questions or were things kind of just happening really quickly?

A. Yes, everything was happening kind of quickly.

Later Appellant's attorney asked whether Appellant ever had the chance to explain to the police that he was "just trying to sleep off being drunk that night," and Appellant responded:

Yes. They asked me when they first knocked on my window, you know, pointing guns at me, why I was there, and I had explained to them what I explained to you.

Finally, Appellant's attorney asked the following:

Q. You've always been cooperative with the police officers in this investigation, correct?

A. Yes, sir, I have.

Q. At any time did they ask you to make a written statement or a confession?

A. No, sir.

Q. At any time do you remember any police officers reading you what's call your Miranda rights?

A. No, sir.

Then, during cross-examination, the State elicited the following testimony:

Q. Now, it's your testimony that when you laid down at this mobile home park past George Dieter on King Palm -- or on Fiji Palm, that you were doing this because you wanted to sober up because you were afraid you'd get arrested for DWI, is that correct?

A. That I was laying there to sober up?

Q. Yes.

A. Yes.

Q. Okay. And the police came, they shined a light and they took you out of the truck --

A. Yes.

Q. -- that's correct? Okay. Did they cover your mouth? Did they put something so that you couldn't ask any questions?

A. No, they didn't.

Q. Okay. In any way physically did they prevent you from talking?

A. I wouldn't say they didn't, no.

Q. Did you at any point, from the point that you were arrested or when you were stopped and pulled out of the truck, all the way to the police station, at any point offer to make a statement as to what had happened that night?

A. Did I offer to make a statement?

Q. Yes.

A. No, I didn't.

From this dialogue, Appellant specifically complains of references to (1) whether anyone covered his mouth or physically prevented him from talking; and (2) whether, at any point between exiting the truck and arriving at the police station, he offered to make a statement as to what happened that night.

The general rule is that when a criminal defendant takes the witness stand he may be cross-examined and impeached as any other witness. *Sanchez*, 707 S.W.2d at 577; *Cisneros v. State*, 692 S.W.2d 78, 83 (Tex.Crim.App. 1985); *Cuellar v. State*, 613 S.W.2d 494, 495 (Tex.Crim.App. 1981). However, this rule is qualified by any overriding constitutional or statutory provisions. *Cuellar*, 613 S.W.2d at 495; *see also Cisneros*, 692 S.W.2d at 83. The State may not use post-arrest silence, whether pre- or post-*Miranda* warnings, to impeach or discredit an exculpatory theory elicited for the first time at trial. *See Doyle*, 426 U.S. at 611, 96 S.Ct. at 2241; *Sanchez*, 707 S.W.2d at 577, 580; *Cisneros*, 692 S.W.2d at 84; *Cuellar*, 613 S.W.2d at 495.

Initially we note that it is unclear from the record when Appellant was arrested and when, if at all, he received his *Miranda* warnings. Several officers testified that although Appellant was handcuffed and placed in the back of a patrol car after exiting his vehicle, he was only detained until

the show up identifications were completed. Then, according to the officers, they informed Appellant he was under arrest as a suspect and they transported him to the police station. The officers do not specifically reference reading Appellant his *Miranda* rights and Appellant testified he does not remember ever receiving such warnings. The Due Process Clause prohibits the cross-examination of a defendant concerning his silence after he has been arrested and *Mirandized*. *Doyle*, 426 U.S. at 619, 96 S.Ct. at 2245. The Texas Constitution provides even broader protection. Under Texas law, a defendant is protected against compelled self-incrimination from the moment an arrest is effectuated. *Sanchez*, 707 S.W.2d at 579-80; *see* TEX.CONST. art. I, § 10. This protection applies regardless of whether he has been advised of his rights. *See Sanchez*, 707 S.W.2d at 579. Thus, it is uncertain whether the comments truly reference constitutionally protected post-arrest silence at all.

Nonetheless, other than the right to a trial by jury, a criminal defendant may waive any error, including constitutional error, by failing to object or request proper relief. *See Little v. State*, 758 S.W.2d 551, 563-64 (Tex.Crim.App. 1988); *Perry v. State*, 703 S.W.2d 668, 673 (Tex.Crim.App. 1986)(reversing lower court's holding that unconstitutionally suggestive identification procedure was fundamental error as unpreserved and stating that "no procedural principle is more familiar to appellate courts of this Nation than that a constitutional right may be waived or forfeited by the failure to make timely assertion of the right"). Consequently, the defendant's right to remain silent and not have that silence used against his at trial is a forfeitable right, and a defendant must object to preserve complaints concerning the admission of evidence showing his pre- and post-arrest silence. *Miller v. State*, 939 S.W.2d 681, 687 (Tex.App.--El Paso 1996, no pet.); *Wheatfall*, 882 S.W.2d at 836 (complaint concerning admission of evidence of defendant's post-arrest silence waived in absence of objection); *Smith*, 721 S.W.2d at 855 (defendant's failure to object to the

admission of evidence showing post-arrest, pre-*Miranda* silence was waived in the absence of an objection; admission of this evidence is not fundamental error); *Cisneros*, 692 S.W.2d at 83 (defendant's complaints concerning the use of pre-arrest and post-arrest silence were waived in the absence of an objection); *see also Salazar v. State*, 131 S.W.3d 210, 215 (Tex.App.--Fort Worth 2004, pet. ref'd)(where appellant failed to object to the State's first question asking "did you just spill your guts to the detective at the police station" and although he did object to the State's following question, he again failed to object when the State asked "if this was an accident, wouldn't you want to climb up on the tallest mountain and yell it to everyone who could hear, it was an accident? Wouldn't a reasonable person do that?" The court found that "[b]ecause appellant failed to object to the admission of substantially similar testimony, he [sic] failed to preserve error.").

Defense counsel failed to object during the questioning. While it is true that certain fundamental errors may be raised for the first time on appeal, it is also well established that a complaint regarding the admission of evidence of a defendant's silence is waived in the absence of an objection. *See Marin v. State*, 851 S.W.2d 275, 279-80 (Tex.Crim.App. 1993). Appellant failed to preserve error with respect to the prosecutor's allegedly improper questioning and impeachment. *See Wheatfall*, 882 S.W.2d at 836; *Ransom v. State*, 789 S.W.2d 572, 584 (Tex.Crim.App. 1989), *cert. denied*, 497 U.S. 1010, 110 S.Ct. 3255, 111 L.Ed.2d 765 (1990)(overruling point of error because trial objection did not comport with complaint on use of post-arrest silence on appeal); *Rodriguez v. State*, 137 S.W.3d 228 (Tex.App.--Houston [1st Dist] 2004, no pet.)(holding that appellant failed to preserve error concerning use of his pre-arrest silence by failing to object at trial). We overrule Issue One.

### *Improper Argument*

In Issue Two, Appellant asserts that the following portion of the State's closing argument was

an improper reference to his post-arrest silence:

> Why, when he was pulled out of the car didn't he tell the cop, Hey, what's going on? What are you doing?
>
> Let's say that he was intimidated by the police officers, police officers can be scary sometimes. Why, when he got to the station didn't he say, Hey, what are you charging me for? What do you mean I committed a burglary? I was drunk, I was just sleeping it off, because I didn't want to get in trouble? No. None of that. Instead he was quiet. He was resigned because he had been caught.

Again, no objection was lodged.

It is improper for a prosecutor to directly comment on a defendant's post-arrest silence. *See Womack v. State*, 834 S.W.2d 545, 546 (Tex.App.--Houston [14th Dist.] 1992, no pet.). To preserve error regarding improper jury argument, a party should (1) contemporaneously object to the statement; (2) request an instruction to that the jury disregard the statement if the objection is sustained; and (3) move for a mistrial if the instruction is granted. *See McDonald v. State*, No. 08-08-00103-CR, 2010 WL 3910424, at *7 (Tex.App.--El Paso Sept. 30, 2010, pet. ref'd)(not designated for publication), *citing Cooks v. State*, 884 S.W.2d 697, 727-28 (Tex. Crim. App. 1992). However, this sequence is not essential. *McDonald*, 2010 WL 3910424 at *7. Rather, to preserve complaints for appellate review, the essential requirement is that a party make a timely, specific request or objection to the argument and pursue the request or objection to an adverse ruling. *Id.*; *Young v. State*, 137 S.W.3d 65, 69 (Tex.Crim.App. 2004); *Mathis v. State*, 67 S.W.3d 918, 926-27 (Tex.Crim.App. 2002); *see* Tex.R.App.P. 33.1.

With respect to his improper argument contention, Appellant acknowledges that he did not properly object to the argument at trial but he claims the error was so fundamental to the judicial process that it requires reversal, despite his failure to object. He directs us to *Romo v. State*, 631 S.W.2d 504, 505 (Tex.Crim.App. 1982), in support of this assertion. The Court of Criminal Appeals

has expressly overruled *Romo* and its progeny in *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex.Crim.App. 1996), *cert. denied*, 520 U.S. 1173, 117 S.Ct. 1442, 137 L.Ed.2d 548 (1997). In *Cockrell*, the court stated that:

> [B]efore a defendant will be permitted to complain on appeal about an erroneous jury argument or that an instruction to disregard could not have cured an erroneous jury argument, he will have to show he objected and pursued his objection to an adverse ruling.

*Cockrell*, 933 S.W.2d at 89. Because Appellant did not object to the argument at trial or through a motion for mistrial, no error is preserved. *See McDonald*, 2010 WL 3910424 at *7; *see also Miller*, 939 S.W.2d at 689 (noting that a defendant's right to remain silent and not have that silence used against him is a forfeitable right and defendant's complaint regarding the admission of evidence rendered his trial fundamentally unfair focuses on the harm caused by the admission of evidence and not by the "category occupied by the particular right at issue," and holding that the failure to object at trial results in a procedural default and waives the contention). We overrule Issue Two.

Finally, we note that even if Appellant had preserved his complaints as to Issues One and Two, they are without merit. Appellant did not maintain post-arrest silence. During direct examination Appellant offered his story to the jury, and testified that he told the same story to the officers. By doing so, he opened the door for the State to question him. Moreover, in closing argument, defense counsel reiterated Appellant's exculpatory story and then specifically referenced Appellant's silence:

> Look at the situation, there's more than one police officer, they're all drawing guns on you, they're putting you in handcuffs, because they testified for their own safety they needed to detain him. He is detained. He is in this not very nice situation going on and he did what he thought was best, to stay quiet.

The argument of which Appellant complains occurred during the State's rebuttal and was to some extent invited by the defense. *See Salazar*, 131 S.W.2d at 215; *Maxson v. State*, 79 S.W.3d 74, 76

(Tex.App.--Texarkana 2002, pet. ref'd); *Wearren v. State*, 877 S.W.2d 545, 547 (Tex.App.--Beaumont 1994, no pet.).

**INEFFECTIVE ASSISTANCE OF COUNSEL**

In Issue Three, Appellant urges an ineffective assistance of counsel claim based on his trial counsel's failure to object to comments regarding his post-arrest silence.

***Standard of Review***

Both the United States and the Texas Constitution guarantee an accused the right to assistance of counsel. U.S. CONST. amend. VI; TEX.CONST. art. I, § 10; TEX.CODE CRIM.PROC.ANN. art. 1.05 (West 2005). This guarantee includes the right to reasonably effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 683-86, 104 S.Ct. 2052, 2062, 80 L.Ed.2d 674 (1984); *Young v. State*, 991 S.W.2d 835, 837 (Tex.Crim.App. 1999). In *Strickland*, the Supreme Court articulated the two-prong test for evaluating claims of ineffective assistance of counsel. *Strickland*, 466 U.S. at 687. The first prong of the Strickland test requires an appellant to show that counsel's performance fell below an objective standard of reasonableness, rendering the representation deficient. *Id.*; *see Andrews v. State*, 159 S.W.3d 98, 101-02 (Tex.Crim.App. 2005). "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687; *Young*, 991 S.W.2d at 837.

We begin with the strong presumption that counsel was competent. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex.Crim.App. 1999). Appellant must overcome the presumption that counsel's conduct falls within the wide range of reasonable, professional assistance, and that, under the circumstances, the challenged action might be considered sound trial strategy. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex.Crim.App. 1994). Thus, a record that is silent as to the facts, circumstances,

or rationale behind a particular course of action generally is not sufficiently developed to overcome the presumption of effective assistance of counsel, and counsel's action or inaction will be found to be reasonable. *Thompson*, 9 S.W.3d at 814; *see Rylander v. State*, 101 S.W.3d 107 (Tex.Crim.App. 2003)(stating, "We have previously stated that the record on direct appeal will generally 'not be sufficient to show that counsel's representation was so deficient as to meet the first part of the *Strickland* standard' as 'the reasonableness of counsel's choices often involves facts that do not appear in the appellate record.'"). In applying this test, an appellate court should not try to second guess counsel's tactical decisions that do not fall below the threshold of the objective standard of reasonableness. *Young*, 991 S.W.2d at 837, *citing Solis v. State*, 792 S.W.2d 95, 100 (Tex.Crim.App. 1990). The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. *Kimmelman v. Morrison*, 477 U.S. 365, 381, 106 S.Ct. 2574, 2586, 91 L.Ed.2d 305 (1986); *see Butler v. State*, 716 S.W.2d 48 (Tex.Crim.App. 1986).

Under the second prong of *Strickland*, an appellant must show that counsel's performance prejudiced his defense. *Strickland*, 466 U.S. at 687. Prejudice requires a showing that, but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different. *Id*. at 694; *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex.Crim.App. 2002); *Vasquez v. State*, 830 S.W.2d 948, 949 (Tex.Crim.App. 1992). Reasonable probability is defined as a "probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "Basically, the question for our review is whether there is a reasonable probability that absent the alleged errors, the factfinder would have had a reasonable doubt respecting guilt." *Ahmadi v. State*, 864 S.W.2d 776, 782 (Tex.App.--Fort Worth 1993, pet. ref'd). In making this determination a court must consider the totality of the evidence before the jury, and the ultimate focus of inquiry must be

on the fundamental fairness of the proceeding whose result is being challenged. *Id*.; *Strickland*, 466 U.S. at 695.

Appellant bears the burden to establish both prongs of the test for ineffective assistance of counsel by a preponderance of the evidence. *Mitchell*, 68 S.W.3d at 642; *Jackson*, 973 S.W.2d at 956; *Rylander*, 101 S.W.3 at 107; *Cannon v. State*, 668 S.W.2d 401, 403 (Tex.Crim.App. 1984). An individual has a right to effective, not errorless, representation. *Bridge v. State*, 726 S.W.2d 558, 571 (Tex.Crim.App. 1986); *Calderon v. State*, 950 S.W.2d 121, 126 (Tex.App.--El Paso 1997, no pet.). An ineffective assistance claim must be "firmly founded in the record," and "the record must affirmatively demonstrate" the meritorious nature of the claim. *Thompson*, 9 S.W.3d at 813. Generally, isolated failures to object to improper evidence do not constitute ineffective assistance of counsel. *Ingham v. State*, 679 S.W.2d 503, 509 (Tex.Crim.App. 1984).

### *Application*

Under his ineffective assistance of counsel claim, Appellant again asserts that the State used "unlawful evidence and argument" of his post-silence arrest to connect Appellant to the crime scene. He then argues that:

> Defense counsel should have objected to this evidence and argument. Because of the lack of corroborative evidence in the State's case, had this unlawful evidence and argument not been made, there is a reasonable probability that the outcome of this case would have been different.

Because Appellant did not file a motion for new trial raising his allegations of ineffective assistance, the record is silent with respect to trial counsel's strategy. Counsel should ordinarily be provided an opportunity to explain their actions before being denounced as ineffective. *Rylander*, 101 S.W.3d at 111. We can find ineffective assistance of counsel only if the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d

390, 392 (Tex.Crim.App. 2005).

In support of his argument, Appellant relies on *Brown v. State*, 974 S.W.2d 289 (Tex.App.--San Antonio 1998, pet ref'd), *quoting* the following paragraph: .

6. Post Arrest Silence

We also find defense counsel's failure to object to questions regarding Brown's post-arrest silence illustrates the ineffectiveness of counsel's assistance. An investigating officer testified that after Brown received her *Miranda* warnings, she 'refused to give me any information or even sign the waiver.' Defense counsel failed to object. Rather, on cross-examination counsel questioned the officer on the meaning of the *Miranda* warnings, seemingly in an effort to illustrate that Brown had no obligation to speak to the police. It is hornbook law that no guilt may be inferred from a citizen's enforcement of the protections afforded her by the *Miranda* warnings. Defense counsel's cross-examination reveals his awareness of this protection, but it is clear that counsel was not prepared to respond to the State's questioning with an objection.

*Brown,* 974 S.W.2d at 294 (internal citation omitted). Unlike Mr. Brown, Appellant chose to testify at trial and opened the door to cross-examination. *See Sledge v. State*, No. 05-93-00667-CR, 1994 WL 247961, *3 (Tex.App.--Dallas June 9, 1994, no pet.)(not designated for publication). "As part of sound trial strategy, defense counsel may open the door to evidence that indirectly concerns a defendant's post-arrest silence." *Id.* at *4, *citing Bell v. State*, 867 S.W.2d 958, 962 (Tex.App.--Waco 1994, no pet.). "If defense counsel does so, it is not evidence of ineffective assistance for defense counsel to fail to object to such evidence elicited by the prosecutor." *Id.* Under these facts, we cannot conclude that counsel's decision was so outrageous that no competent attorney would have engaged in it.

For these reasons, we find Appellant has not met his burden of proof under the first *Strickland* prong. We overrule Issue Three and affirm the judgment of the trial court.

August 24, 2011

_____
ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)